Ashley C. Seeley (State Bar No. 270530)
ashley@calhounseeley.com
SEELEY LLC
1459 18th Street #174
San Francisco, California 94107
Telephone: (720) 272-1799

Attorney for Defendant and Counterclaimant
NATIONAL AG FINANCE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| WILLIAM KASEL, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>NATIONAL AG FINANCE INC., a Delaware corporation; JOSHUA J. MITCHEY, an individual; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 2:26-cv-04310-RGK-DSR<br><br>**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint Filed: March 6, 2026<br>First Amended<br>Complaint Filed: June 30, 2026<br>Trial Date: January 26, 2027 |

*SEELEY LLC*
*1459 18th St. #174*
*San Francisco, California 94107*

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

Defendant National Ag Finance Inc. (NAF), by and through its undersigned counsel, hereby answers the First Amended Complaint (FAC) filed by Plaintiff William Kasel (Plaintiff or Kasel) and asserts its affirmative defenses and counterclaims as set forth below. Except as expressly admitted, NAF denies each and every allegation of the FAC. The headings used by Kasel in the FAC are restated herein for ease of reference only. NAF denies the characterizations contained in those headings and denies any allegations they purport to assert.

**PART I: RESPONSES TO ALLEGATIONS**

**GENERAL ALLEGATIONS**

**The Parties**

1. NAF admits Kasel is an individual. NAF lacks knowledge or information sufficient to form a belief as to whether Kasel resides in Hermosa Beach, Los Angeles County, California and on that basis, denies the allegation.

2. NAF admits it is a Delaware corporation with its principal place of business at 5500 Greenwood Plaza Blvd., Suite 130, Greenwood Village, Colorado 80111. NAF admits it does not underwrite or fund loans. NAF facilitates agricultural loan transactions by marketing to prospective borrowers and connecting them with lending partners, and it uses software in support of those operations. NAF denies the remaining allegations of Paragraph 2.

3. NAF admits Joshua J. Mitchey (Mitchey) is an individual and is NAF's Chief Executive Officer and a co-founder. NAF admits it made a company email address available to Plaintiff for use during the engagement. NAF admits Mitchey and Plaintiff exchanged text messages and that Mitchey was copied on NAF's February 5, 2026 letter; those documents speak for themselves, and NAF denies every characterization of them. NAF denies that Mitchey is properly sued in his individual capacity. NAF denies the remaining allegations of Paragraph 3.

4. NAF admits Ashley C. Seeley is NAF's Chief Legal Officer, Chief Operating Officer, and Secretary, is a co-founder of NAF, is an attorney admitted to

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

the California State Bar (Bar No. 270530), and is NAF's counsel of record in this action. NAF admits Seeley is not named as a defendant in the First Amended Complaint. NAF admits Seeley negotiated the Consulting Agreement (Agreement) and the Confidential Information and Invention Assignment Agreement (CIIAA) on NAF's behalf and sent NAF's February 5, 2026 letter; those documents and the parties' negotiation correspondence speak for themselves, and NAF denies every characterization of them and of their drafting history. NAF admits Seeley corresponded with Plaintiff regarding payment timing; that correspondence speaks for itself, and NAF denies every characterization of it. Seeley's professional background and practice are matters of public record, and NAF denies Plaintiff's characterization of them. The allegations concerning imputation, inference, knowledge, and willfulness state legal conclusions to which no response is required; to the extent a response is required, NAF denies them. NAF denies the remaining allegations of Paragraph 4.

5.     NAF lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 5 and, on that basis, denies them.

**Jurisdiction and Venue**

6.     NAF admits Plaintiff filed this action in the Superior Court of California, County of Los Angeles, Southwest District, Case No. 26TRCV00817, on March 6, 2026; that NAF removed the action to this Court on April 23, 2026, asserting diversity jurisdiction under 28 U.S.C. § 1332; and that the Court entered its Order on June 23, 2026 (ECF No. 37). The Order speaks for itself, and NAF denies every characterization of it. The remaining allegations, including Plaintiff's statements regarding the scope of this pleading and his reservation of rights, require no response; to the extent a response is required, NAF denies them.

7.     NAF admits this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a); that Plaintiff is a citizen of California; that NAF is a citizen of Delaware, its state of incorporation, and of Colorado, its principal place of business; that Mitchey is

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

a citizen of Colorado; and that the amount in controversy exceeds $75,000, exclusive of interest and costs.

7A.   Paragraph 7A states legal conclusions to which no response is required. To the extent a response is required, NAF admits this Court has personal jurisdiction over Defendants for purposes of this action and denies the remaining allegations of Paragraph 7A, including every characterization of Mitchey's conduct.

8.   Paragraph 8 states legal conclusions to which no response is required. To the extent a response is required, NAF admits this Court has personal jurisdiction over Defendants for purposes of this action; admits NAF engaged Plaintiff, a California resident, as an independent contractor; and denies the remaining allegations of Paragraph 8.

9.   NAF admits venue is proper in this District. NAF denies the remaining allegations of Paragraph 9.

### FACTUAL ALLEGATIONS

**The Consulting Agreement**

10.   NAF admits that on or about April 30, 2025, Plaintiff sent Mitchey a draft consulting agreement, and that the parties executed the Agreement on or about May 2, 2025. The Agreement, the CIIAA, and the parties' negotiation correspondence speak for themselves, and NAF denies every characterization of them and of their drafting history. NAF denies the remaining allegations of Paragraph 10.

11.   The Agreement speaks for itself, and NAF denies every characterization of it, including any characterization by selective quotation. NAF denies the remaining allegations of Paragraph 11.

12.   NAF admits the Agreement classified Plaintiff as an independent contractor. The Agreement and the CIIAA speak for themselves, and NAF denies every characterization of them, including any characterization by selective quotation. NAF denies the remaining allegations of Paragraph 12.

Case No. 2:26-cv-04310-RGK-DSR

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

13. The Agreement and the CIIAA speak for themselves, and NAF denies every characterization of them, including any characterization by selective quotation. NAF denies the remaining allegations of Paragraph 13.

14. The Agreement speaks for itself, and NAF denies every characterization of it, including any characterization by selective quotation. NAF denies the remaining allegations of Paragraph 14.

**The Working Relationship Was Employment in All But Name**

15. NAF denies the allegations in Paragraph 15.

16. NAF admits it made a company email address available to Plaintiff for use during the engagement, that Plaintiff attended certain NAF meetings, and that Plaintiff was at times identified using a CTO title. The August 26, 2025 communications speak for themselves, and NAF denies every characterization of them. NAF denies the remaining allegations of Paragraph 16.

17. NAF admits it does not underwrite or fund agricultural loans. NAF facilitates agricultural loan transactions by marketing to prospective borrowers and connecting them with lending partners, and it uses software in support of those operations. NAF denies that Plaintiff built the software NAF uses, denies that any software product is NAF's business or its only competitive differentiator, and denies that the services Plaintiff performed were within NAF's usual course of business. NAF denies the remaining allegations of Paragraph 17.

18. NAF admits Mitchey initiated contact with Plaintiff through the Upwork platform on or about April 26, 2025. NAF lacks knowledge or information sufficient to form a belief as to the allegations concerning Loop and, on that basis, denies them. NAF denies the remaining allegations of Paragraph 18, including that Plaintiff was not customarily engaged in an independently established trade, occupation, or business.

19. NAF denies the allegations of Paragraph 19.

**Payment History and NAF's Failure to Pay Final Wages**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

**SEELEY LLC**
1459 18th St. #174
San Francisco, California 94107

20.    NAF admits it made approximately nine payments to Plaintiff between April 2025 and January 2026; the payment records and the parties' communications speak for themselves, and NAF denies every characterization of them. NAF denies the remaining allegations of Paragraph 20.

21.    NAF admits Plaintiff gave written notice terminating the Agreement on January 28, 2026; that notice and Plaintiff's related communications speak for themselves, and NAF denies every characterization of them. NAF lacks knowledge or information sufficient to form a belief as to Plaintiff's private time-tracking practices and, on that basis, denies those allegations. NAF denies the remaining allegations of Paragraph 21, including that Plaintiff completed all outstanding Priority 0 tasks.

22.    NAF admits Mitchey responded to Plaintiff's January 28, 2026 notice; that response speaks for itself, and NAF denies every characterization of it, including any characterization by selective quotation. NAF admits it organized a transition process following Plaintiff's termination of the Agreement, the written records of which speak for themselves. NAF denies the remaining allegations of Paragraph 22.

23.    NAF denies it owes Plaintiff $12,400 or any other amount. NAF admits Plaintiff submitted invoices totaling $12,400. The February 6, 2026 letter and the invoice and payment records speak for themselves, and NAF denies every characterization of them. NAF denies the remaining allegations of Paragraph 23.

24.    The parties' communications concerning payment timing speak for themselves, and NAF denies every characterization of them. NAF denies the remaining allegations of Paragraph 24.

25.    NAF admits it has made no payment to Plaintiff since Plaintiff terminated the Agreement on January 28, 2026. NAF denies that wages of any kind are owed or were ever owed to Plaintiff, and denies it refused to pay any amount due. NAF lacks knowledge or information sufficient to form a belief as to Plaintiff's personal financial circumstances and, on that basis, denies those allegations. NAF denies the remaining allegations of Paragraph 25.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST
AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

**NAF's Retaliatory Cease and Desist Letter**

26. NAF admits Seeley sent Plaintiff a letter dated February 5, 2026, on NAF's behalf, and that Mitchey was copied; the letter and its transmittal speak for themselves, and NAF denies every characterization of them. NAF denies the remaining allegations of Paragraph 26.

27. The February 5, 2026 letter speaks for itself, and NAF denies every characterization of it, including any characterization by selective quotation. NAF admits Plaintiff sent Mitchey a text message on February 5, 2026, which speaks for itself, and NAF denies every characterization of it. NAF denies the remaining allegations of Paragraph 27, including that the third-party accounts used in connection with NAF's operations were Plaintiff's personal accounts, that any access change was accidental, that no NAF data was compromised, that no service interruption occurred, and that the disruption lasted approximately 2.5 hours.

28. The February 5, 2026 letter speaks for itself, and NAF denies every characterization of it, including any characterization by selective quotation. NAF denies the remaining allegations of Paragraph 28.

29. NAF admits Mitchey sent Plaintiff a text message on or about October 8, 2025, which speaks for itself, and NAF denies every characterization of it, including any characterization of its meaning or context. NAF denies the remaining allegations of Paragraph 29.

30. NAF admits Plaintiff sent a letter dated February 6, 2026, which speaks for itself, and NAF denies every characterization of it. NAF denies the remaining allegations of Paragraph 30.

31. NAF denies the allegations of Paragraph 31, including each of its subparts.

32. NAF denies the allegations of Paragraph 32. NAF's operative counterclaims in this action arise in part from the February 2026 access incident.

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

33.    Any invitations or account records concerning the transition speak for themselves, and NAF denies every characterization of them. NAF denies the remaining allegations of Paragraph 33.

34.    NAF admits Seeley's April 23, 2026 declaration states her positions; the declaration speaks for itself, and NAF denies every characterization of it. NAF denies the remaining allegations of Paragraph 34.

35.    The Agreement, the CIIAA, and the parties' negotiation correspondence speak for themselves, and NAF denies every characterization of them and of their drafting history. The allegations concerning Seeley's knowledge and intent state legal conclusions to which no response is required; to the extent a response is required, NAF denies them. NAF denies the remaining allegations of Paragraph 35.

36.    NAF admits Seeley participated in a video meeting with X-Caliber personnel in or about January 2026, attended by Plaintiff and Mitchey; any statements made in that meeting, and any recording or transcription of it, speak for themselves, and NAF denies every characterization of them. NAF denies the remaining allegations of Paragraph 36.

37.    The parties' communications concerning payment timing speak for themselves, and NAF denies every characterization of them. NAF denies the remaining allegations of Paragraph 37.

38.    NAF denies the allegations of Paragraph 38.

**NAF's Willful Misclassification Scheme**

39.    The Agreement and the CIIAA speak for themselves, and NAF denies every characterization of them, including any characterization by selective quotation. The allegations concerning Seeley's knowledge, and the allegations that NAF's classification of Plaintiff was willful, state legal conclusions to which no response is required; to the extent a response is required, NAF denies them. NAF denies the remaining allegations of Paragraph 39.

**SEELEY LLC**
1459 18th St. #174
San Francisco, California 94107

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

39A.  NAF admits it entered into a statement of work with another consultant in or about October 2025; that document speaks for itself, and NAF denies every characterization of it. NAF denies the remaining allegations of Paragraph 39A.

40.    NAF admits it did not provide Plaintiff statements under Labor Code section 226 because Plaintiff was an independent contractor to whom section 226 does not apply. NAF denies that any such statement was required and denies the remaining allegations of Paragraph 40.

41.    NAF denies it failed to reimburse Plaintiff for any expense NAF was obligated to reimburse, and denies that any reimbursement obligation existed. The invoice and payment records speak for themselves, and NAF denies every characterization of them. NAF denies the remaining allegations of Paragraph 41.

42.    NAF denies the allegations of Paragraph 42.

42A.  NAF denies the allegations of Paragraph 42A.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: BREACH OF WRITTEN CONTRACT

### (Against Defendant NAF)

43.    NAF incorporates its responses to Paragraphs 1 through 42A as though fully set forth herein.

44.    NAF denies the allegations of Paragraph 44, except as expressly admitted in response to the General Allegations above.

45.    NAF denies the allegations of Paragraph 45.

46.    NAF denies the allegations of Paragraph 46.

47.    NAF denies the allegations of Paragraph 47.

48.    NAF denies the allegations of Paragraph 48.

### SECOND CAUSE OF ACTION:

### FAILURE TO PAY FINAL WAGES; WAITING TIME PENALTIES

### (Lab. Code §§ 201, 202 Against NAF; Lab. Code §203

### Against NAF and Mitchey Pursuant to §558.1)

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

49.   NAF incorporates its responses to Paragraphs 1 through 48 as though fully set forth herein.

50.   NAF denies the allegations of Paragraph 50.

51.   Paragraph 51 states legal conclusions to which no response is required. To the extent a response is required, NAF denies the allegations of Paragraph 51.

52.   NAF denies the allegations of Paragraph 52, except as expressly admitted in response to the General Allegations above.

53.   NAF denies the allegations of Paragraph 53.

54.   NAF denies the allegations of Paragraph 54.

55.   NAF denies the allegations of Paragraph 55, except that the text messages referenced therein speak for themselves, and NAF denies every characterization of them, including any characterization by selective quotation.

### THIRD CAUSE OF ACTION:

### FAILURE TO FURNISH ITEMIZED WAGE STATEMENTS

### (Lab. Code § 226 – Against Defendant NAF)

56.   NAF incorporates its responses to Paragraphs 1 through 55 as though fully set forth herein.

57.   Paragraph 57 states legal conclusions to which no response is required. To the extent a response is required, NAF denies the allegations of Paragraph 57.

58.   NAF denies the allegations of Paragraph 58, except as expressly admitted in response to the General Allegations above.

59.   Paragraph 59 states legal conclusions to which no response is required. To the extent a response is required, NAF denies the allegations of Paragraph 59.

60.   NAF denies the allegations of Paragraph 60.

### FOURTH CAUSE OF ACTION:

### FAILURE TO REIMBURSE BUSINESS EXPENSES

### (Lab. Code § 2802 – Against Defendant NAF)

10   Case No. 2:26-cv-04310-RGK-DSR

61. NAF incorporates its responses to Paragraphs 1 through 60 as though fully set forth herein.

62. Paragraph 62 states legal conclusions to which no response is required. To the extent a response is required, NAF denies the allegations of Paragraph 62.

63. NAF denies the allegations of Paragraph 63, except as expressly admitted in response to the General Allegations above.

64. Paragraph 64 states legal conclusions to which no response is required. To the extent a response is required, NAF denies the allegations of Paragraph 64.

### FIFTH CAUSE OF ACTION: UNFAIR BUSINESS PRACTICES

### (Bus. & Prof. Code § 17200 et seq. – Against NAF and Mitchey)

65. NAF incorporates its responses to Paragraphs 1 through 64 as though fully set forth herein.

66. Paragraph 66 states legal conclusions to which no response is required. To the extent a response is required, NAF denies the allegations of Paragraph 66.

67. NAF denies the allegations of Paragraph 67, including each of its subparts.

68. NAF denies the allegations of Paragraph 68.

69. NAF denies the allegations of Paragraph 69.

70. NAF denies the allegations of Paragraph 70.

70A. NAF denies the allegations of Paragraph 70A.

71. NAF denies the allegations of Paragraph 71.

72. NAF denies the allegations of Paragraph 72.

### SIXTH CAUSE OF ACTION: DECLARATORY RELIEF

### (Bus. & Prof. Code § 16600; CCP § 1060 – Against Defendant NAF)

73. NAF incorporates its responses to Paragraphs 1 through 72 as though fully set forth herein.

74. NAF denies the allegations of Paragraph 74.

Case No. 2:26-cv-04310-RGK-DSR

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

75. NAF denies the allegations of Paragraph 75, except that the Agreement and the CIIAA speak for themselves, and NAF denies every characterization of them, including any characterization by selective quotation.

76. Paragraph 76 states legal conclusions to which no response is required. To the extent a response is required, NAF denies the allegations of Paragraph 76.

77. NAF denies the allegations of Paragraph 77, except as expressly admitted in response to the General Allegations above.

78. Paragraph 78 states Plaintiff's requests for relief, to which no response is required. To the extent a response is required, NAF denies the allegations of Paragraph 78 and denies that Plaintiff is entitled to any of the relief sought.

79. NAF denies the allegations of Paragraph 79.

**SEVENTH CAUSE OF ACTION: RETALIATION**

**(Lab. Code §98.6 – Against NAF and Mitchey)**

80. NAF incorporates its responses to Paragraphs 1 through 79 as though fully set forth herein.

81. Paragraph 81 states legal conclusions to which no response is required. To the extent a response is required, NAF denies the allegations of Paragraph 81.

82. NAF denies the allegations of Paragraph 82.

83. NAF denies the allegations of Paragraph 83, except that the communications referenced therein speak for themselves, and NAF denies every characterization of them.

84. NAF admits Plaintiff sent a letter dated February 6, 2026, which speaks for itself, and NAF denies every characterization of it. NAF denies the remaining allegations of Paragraph 84.

85. NAF denies the allegations of Paragraph 85.

86. NAF denies the allegations of Paragraph 86.

87. Paragraph 87 states legal conclusions to which no response is required. To the extent a response is required, NAF denies the allegations of Paragraph 87.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

88.    NAF denies the allegations of Paragraph 88, except that the communications referenced therein speak for themselves, and NAF denies every characterization of them.

89.    NAF denies the allegations of Paragraph 89.

## PRAYER FOR RELIEF

NAF denies that Plaintiff is entitled to any of the relief requested in his Prayer for Relief, or to any relief whatsoever.

## DEMAND FOR JURY TRIAL

Plaintiff's jury demand requires no response. NAF demands a jury trial on all issues so triable.

**SEELEY LLC**
1459 18th St. #174
San Francisco, California 94107

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

## PART II: AFFIRMATIVE DEFENSES

Without waiving or limiting any of the foregoing responses, and without assuming the burden of proof on any issue on which Plaintiff bears the burden, NAF asserts the following affirmative defenses. NAF expressly reserves the right to amend and to assert additional affirmative defenses upon further investigation and discovery.

### FIRST AFFIRMATIVE DEFENSE

### (Independent Contractor Status)

1.      Kasel was an independent contractor, not an employee, throughout the engagement. The parties expressly agreed to this classification in Section 5 of the Agreement. Kasel controlled the method, details, and means of performing his services. Kasel was free to hire subcontractors at his own expense. Kasel worked remotely using his own equipment and tools. Each cause of action that depends on an employment relationship fails because no employment relationship existed, including under Labor Code section 2776 and *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989).

### SECOND AFFIRMATIVE DEFENSE

### (Governing Law: Colorado)

2.      The Agreement and the CIIAA each contain a Colorado choice-of-law provision (Section 11(a) and Section 12(a), respectively). Colorado law governs the parties' contractual rights and obligations. To the extent the threshold employee-versus-contractor determination is governed by California law, the contractual provisions nevertheless govern the parties' respective obligations regarding compensation, expenses, termination, and confidentiality.

### THIRD AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

3.      The First Amended Complaint (FAC), and each cause of action therein, fails to state a claim upon which relief can be granted.

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

## FOURTH AFFIRMATIVE DEFENSE

### (Good Faith Dispute)

4.     NAF's non-payment of any amounts claimed by Kasel was and is the result of a good-faith dispute as to whether any amounts are owed. A good-faith dispute negates the "willful" element required for waiting time penalties under Labor Code Section 203. NAF disputes that any compensation is owed in light of Kasel's material breaches of the Agreement, including the delivery of materially deficient work product and the unauthorized manipulation of NAF's systems. This affirmative defense is directed to the Second Cause of Action and any other cause of action requiring a showing of willfulness or knowing conduct.

## FIFTH AFFIRMATIVE DEFENSE

### (Contractual Limitation on Expenses)

5.     Kasel's expense-reimbursement claim (Fourth Cause of Action) is barred by the express terms of the Agreement. Exhibit C provides that reimbursable expenses are "[n]one, unless specifically requested and pre-approved by Company in writing." Kasel never sought or obtained such approval. Moreover, expenses were not necessary, reasonable, primarily for NAF's benefit, or properly attributable to NAF. Even assuming an employment relationship existed, Kasel cannot recover expenses he incurred without authorization.

## SIXTH AFFIRMATIVE DEFENSE

### (Setoff and Recoupment)

6.     NAF is entitled to setoff and recoupment against any amounts Kasel may recover. Kasel's material breaches of the Agreement and CIIAA caused NAF damages that exceed any amount Kasel claims is owed. NAF's counterclaims, set forth below, seek affirmative recovery for those damages and this applies to any sums otherwise recoverable by Kasel and arises from the same transaction or occurrence.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

## SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

7.     Kasel's claims for equitable relief — including restitution, disgorgement, and declaratory relief under the Fifth and Sixth Causes of Action — are barred, in whole or in part, by the doctrine of unclean hands. Kasel misrepresented his qualifications and the status of deliverables throughout the engagement, failed to disclose competing engagements as required by the Agreement, delivered materially deficient work product, and manipulated NAF's Vercel account on February 5, 2026 to deny NAF access to its own application. A plaintiff who engages in such conduct cannot obtain equitable relief.

## EIGHTH AFFIRMATIVE DEFENSE

### (Prior Material Breach by Plaintiff)

8.     Kasel's claims are barred, in whole or in part, by his own material breaches of the Agreement, including but not limited to: failure to perform the Services such that results were satisfactory to the Company (Section 1); failure to disclose competing engagements (Section 8 and Exhibit E); and breach of the CIIAA, including the unauthorized manipulation of NAF's systems.

## NINTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

9.     Kasel's claims, or certain of them, are barred in whole or in part by the applicable statute(s) of limitations.

## TENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

10.     Kasel failed to mitigate his damages, if any, and any recovery should be reduced accordingly.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

## ELEVENTH AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, and Acquiescence)

11.     Kasel's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and acquiescence based on Kasel's specific conduct, including: (a) voluntarily executing the Agreement with full knowledge of the independent contractor classification in Section 5; (b) voluntarily executing the CIIAA, including the certifications in Exhibit E; (c) performing under both agreements for approximately nine months without objecting to his classification or the terms of the engagement; (d) invoicing NAF as an independent contractor throughout the engagement; (e) simultaneously operating multiple concurrent business ventures, which is inconsistent with an employment relationship; and (f) advertising his services on Upwork as an independent contractor available to the public.

## TWELFTH AFFIRMATIVE DEFENSE

### (No Pattern or Practice)

12.     Kasel's allegation that NAF engaged in a "pattern and practice" of worker misclassification is made "on information and belief" without any factual support. NAF denies that any such pattern or practice exists.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (No Entitlement to Attorneys' Fees)

13.     Kasel is not entitled to attorney's fees. Kasel is proceeding pro se and has incurred no attorney's fees.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

14.     NAF reserves the right to assert the after-acquired evidence doctrine to limit or bar Kasel's recovery to the extent discovery reveals additional breaches, misconduct, or misrepresentations by Kasel beyond those currently known to NAF.

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Consent / Voluntary Agreement)

15.    Kasel's claims are barred, in whole or in part, because Kasel voluntarily entered into the Agreement, voluntarily accepted the independent contractor classification in Section 5, voluntarily executed the CIIAA, and performed under those agreements for approximately nine months. Kasel cannot now challenge terms he freely and knowingly agreed to.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (No Damages / Speculative Damages)

16.    Kasel's alleged damages are speculative, uncertain, and unsubstantiated. The waiting time penalty calculation assumes an eight-hour workday NAF never required. The expense reimbursement figures are estimated ranges, not documented amounts. The Section 17200 disgorgement claim is based on hypothetical employer costs NAF never incurred because Kasel was an independent contractor. To the extent Kasel suffered damages, which NAF denies, they are not recoverable as alleged.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Limitation on UCL Remedies)

17.    Kasel's claims for disgorgement under Business and Professions Code Section 17200 are barred to the extent they seek nonrestitutionary relief. Kasel seeks disgorgement of employer taxes, insurance premiums, and other costs NAF allegedly "avoided" through Kasel's classification as an independent contractor. These amounts are not money or property in which Kasel has an ownership interest and are not recoverable as restitution under Section 17203.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Litigation Privilege)

18

Case No. 2:26-cv-04310-RGK-DSR

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

18. Plaintiff's claims, including the Seventh Cause of Action, are barred in whole or in part by California Civil Code section 47(b) to the extent they are premised on the February 5, 2026 letter, NAF's counterclaims, or any other communication made in connection with anticipated or pending litigation. *Silberg v. Anderson*, 50 Cal. 3d 205 (1990); *Rusheen v. Cohen*, 37 Cal. 4th 1048 (2006).

## NINETEENTH AFFIRMATIVE DEFENSE

### (Noerr-Pennington Doctrine)

19. Plaintiff's claims are barred in whole or in part by the Noerr-Pennington doctrine and the First Amendment to the extent they are premised on NAF's filing or maintenance of counterclaims or other petitioning activity.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

20. Plaintiff's claims for equitable relief, including under Business and Professions Code section 17200, are barred because Plaintiff has an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Inapplicability of Sections 16600, 16600.1, and 16600.5)

21. Plaintiff's claims premised on Business and Professions Code sections 16600, 16600.1, or 16600.5 fail because the provisions at issue are lawful under the law governing the Agreement, Plaintiff was not an employee, and section 16600.1 imposed no notice obligation with respect to the provisions or relationship at issue.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Additional Defenses / Reservation of Rights)

22. NAF expressly reserves the right to amend this answer and to assert additional affirmative defenses upon completion of discovery and further investigation of the facts and claims at issue.

WHEREFORE, NAF prays for judgment as follows on Plaintiff's First Amended Complaint:

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

A.   That Plaintiff take nothing by reason of the First Amended Complaint or any cause of action therein;

B.   That the First Amended Complaint be dismissed with prejudice;

C.   That NAF recover its costs of suit; and

D.   Such other and further relief as the Court deems just and proper.

SEELEY LLC

1459 18th St. #174
San Francisco, California 94107

Case No. 2:26-cv-04310-RGK-DSR

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

**SEELEY LLC**
1459 18th St. #174
San Francisco, California 94107

# PART III: COUNTERCLAIMS

Defendant and Counterclaimant National Ag Finance Inc. (NAF), by and through its undersigned counsel, brings the following counterclaims against Counter-Defendant William Kasel (Kasel). NAF sets forth the following counterclaims without assuming the burden of proof on any issue on which Kasel bears the burden. NAF expressly reserves the right to amend, modify, and expand these Counterclaims as additional information becomes available and is otherwise discovered.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over these counterclaims under 28 U.S.C. Section 1367 (supplemental jurisdiction) because they arise from the same transaction or occurrence as Kasel's claims.

2. Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c), 1391, and 1446.

## PARTIES

3. Defendant/Counterclaimant NAF is a Delaware corporation with its principal place of business at 5500 Greenwood Plaza Blvd., Suite 130, Greenwood Village, CO 80111.

4. On information and belief, Plaintiff/Counter-Defendant Kasel is an individual residing in Hermosa Beach, Los Angeles County, CA.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTERCLAIMS

**The Contract**

5. NAF facilitates agricultural loan transactions by connecting prospective borrowers with lending partners; it does not itself underwrite or fund the loans.

6. At the time of the events giving rise to these Counterclaims, NAF was an early-stage company that had not yet begun accepting applications from prospective borrowers. NAF needed a borrower-intake application: a standard web-based form through which prospective borrowers could begin to apply for loans on NAF's website.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

7.     NAF could not launch — meaning, make the application available on its website and begin receiving borrower applications — until Kasel delivered the application or, at minimum, a working version of it.

8.     NAF first encountered Kasel on Upwork, a publicly traded online marketplace where businesses can engage independent contractors for project-based work. Kasel maintained an Upwork profile, held himself out as an independent contractor, and submitted a proposal to NAF through Upwork.

9.     On or about May 2, 2025, NAF engaged Kasel by entering into a written contract consisting of (a) a Consulting Agreement, together with its Exhibits A through E (Agreement), and (b) a Confidential Information and Invention Assignment Agreement, together with its Exhibits A through C (CIIAA). The CIIAA is attached to the Agreement as Exhibit D.

10.    The Agreement classified Kasel as an independent contractor.

11.    In Section 1 of the Agreement, Kasel represented he "has the qualifications, the experience and the ability to properly perform the Services." Kasel agreed to "use [his] best efforts to perform the Services such that the results are satisfactory to [NAF]."

12.    The services Kasel was to provide were described in the Agreement's Exhibit A. Services were organized in three phases over an estimated maximum of eight weeks, with a total estimated scope of 170 to 230 hours. Kasel's compensation was $200 per hour payable in 50-hour increments. At the $200 hourly rate, the upper-end estimate cost was $46,000.

a.     Phase 1 — the minimum viable product NAF wanted — included core functionality. It included: (a) encryption and compliance, (b) borrower information storage and an administrative panel, (c) loan intake form for applicants to complete and an integration with NAF's lending partner's technology, (d) automated data deletion,

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

and (e) testing and deployment of the application. Phase 1 was estimated at 100 to 135 hours across weeks 1 through 4.

b.   Phase 2 — essential enhancements — included a dashboard for applicants, referral tracking, and marketing automation. This was estimated at 50 to 65 hours across weeks 5 and 6.

c.   Phase 3 — non-critical features — included an agent directory and consent tracking. NAF planned to handle consent tracking outside the application Kasel was to build until this Phase 3 feature went live. Phase 3 was estimated at 20 to 30 hours across weeks 7 and 8.

13.   Phase 1 alone — and ultimately a subset of Phase 1 — was all NAF needed to launch and begin receiving loan applications.

14.   The CIIAA defines two categories of NAF property central to these counterclaims. Section 4(c) defines "Company Inventions" as any and all inventions Kasel authored, discovered, developed, conceived, or reduced to practice in connection with the Services (Company Inventions). Section 4(d) assigns all Company Inventions to NAF. Section 3(b) defines "Confidential Information" to include Company Inventions, together with a broad range of other NAF information — including, without limitation, technical data, trade secrets, software code, business plans, and customer information (Confidential Information).

15.   Under Section 4 of the CIIAA, all inventions conceived or developed by Kasel in connection with his services for NAF are NAF's property. Upon termination of the CIIAA, Kasel was required to deliver to NAF all its records, data, notes, reports, specifications, materials, other documents and property, and all reproductions of these materials, among other materials.

16.   Section 6 of the CIIAA required Kasel to comply with and sign a Termination Certification (CIIAA Exhibit C). The Termination Certification requires Kasel to certify that as of termination of the parties' contract, he has returned all NAF property and retained no Confidential Information.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

**Kasel's Deficient Performance**

17.    NAF paid Kasel $84,047 between April 2025 and January 2026. At his $200-per-hour rate, that equates to approximately 420 hours — nearly double the 230-hour upper estimate for Phases 1 through 3 combined, and more than three times the 135-hour upper estimate for Phase 1 alone. Kasel did not perform competent work. He did not deliver a functioning Phase 1 application.

18.    The code Kasel wrote was materially deficient, poorly structured, and unable to function as a coherent application.

**Kasel's Pattern of Missed Commitments**

19.    Throughout the engagement, Kasel missed four launch dates and made a series of written and verbal representations that the application was nearly complete. The targets were mid-June 2025, August 1, 2025, November 15, 2025, and early January 2026. The application did not launch on the first three dates. On the fourth date — in early January 2026 — the application went live briefly, failed, and had to be taken down because it did not work as Kasel had represented. After each missed date, Kasel represented more money and more time would deliver the application. Each representation was followed by additional billing and another missed date.

20.    Kasel's invoices, his transmittal emails, and charts he attached to four of those emails illustrate the pattern.

a.    **April 30–May 2, 2025 (proposal and Agreement Exhibit A).** On April 30, 2025, Kasel wrote: "[o]ur goal is to have phase 1, and phase 2 complete by ~mid June if not sooner."

b.    **May 19, 2025 (Invoice #002).** With Invoice #002, Kasel transmitted a chart reporting his percentage of completion for each category of work across the three phases. The chart showed the majority of Kasel's reported progress concentrated on Phase 1.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

c. **June 11, 2025 (Invoice #003).** With Invoice #003, Kasel transmitted another completion chart. Like the May chart, it showed the majority of Kasel's reported progress on Phase 1.

d. **June 25, 2025 (Invoice #004).** Transmitting Invoice #004, Kasel represented "we are tracking on schedule." As of this invoice, Kasel had already missed his previously set target of "~mid June if not sooner." Kasel attached another completion chart, again showing his reported progress concentrated in Phase 1.

e. **July 12, 2025 (Invoice #005).** Kasel transmitted Invoice #005, a new 50-hour retainer. He represented items were nearly complete and NAF could "hit our August 1 goals!" He stated only "another 8 hours + whatever we land on for the marketing automation" remained, after which "we are all done with this!" Kasel attached a completion chart reporting every Phase 1 category at 100% complete, with one exception reported at 88%. Kasel further reported one Phase 1 category at 133% of the estimated hours, with a notation additional work had been performed beyond the original scope. August 1 passed; the application was not functioning.

f. **October 7, 2025 (Invoice #0006).**[1] Kasel issued Invoice #0006, labeled "Final Stages of Production (50% payment)," representing $20,000 would conclude the work and committing to an application ready for launch by November 15, 2025.

g. **January 9, 2026 (email to NAF).** In early January 2026, NAF launched the application based on Kasel's assurances it was functional. On January 9, Kasel represented in writing NAF was "over the hump and launched," the remaining work was "very

---

[1] Kasel labeled this "#0006" rather than continuing the three-digit sequence ("#006") he used for prior invoices. The four-digit form is reproduced as he issued it.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

close" to complete, and the engagement would conclude with a final balance of $18,600 — he "won't go over that number." The application did not work properly and NAF was forced to take it offline.

21.    Kasel terminated the Agreement January 28, 2026. NAF accepted the termination effective the same day.

22.    Kasel never delivered a functioning application.

23.    Kasel's representations on status, timing, and cost were false. Kasel's own completion charts reported Phase 1 as nearly complete, with most categories at or above 100%, well before the application was in any state capable of launch. Kasel knew, or with reasonable diligence should have known, his representations were false when made.

24.    Whether Kasel lacked the competence to deliver or deliberately prolonged the engagement to continue billing, the result was the same: NAF paid $84,047 and received no functioning application.

25.    NAF relied on Kasel's representations. No one at NAF is a software developer. NAF continued paying successive invoices based on what Kasel said about the status of his work.

**NAF's Progressive Scope Reductions**

26.    Throughout Fall 2025, Kasel's inability to deliver a functioning application caused NAF to progressively narrow the scope of work. Each was driven by one of his failures and followed by his assurances the narrower version would work. None did.

27.    During the engagement, NAF decided to change lending partners. Kasel represented the back-end components he had built were complete and would function with any lending partner, and the remaining work required to complete Phase 1 was front-end only. NAF proceeded in reliance on those representations. Kasel did not deliver a functioning integration with any lending partner during the engagement.

26    Case No. 2:26-cv-04310-RGK-DSR

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

28. The first scope reduction was prompted by Kasel's inability to make the logic of a full application work. Kasel could not get information entered into the website to flow correctly into an application. NAF reduced the scope.

29. In or around October 2025, Kasel represented he could build the reduced scope. Kasel represented he would bring in a third-party developer to assist.

30. NAF targeted November 15, 2025 as the launch date. In preparation for that date, the first two attempted demonstrations of the application occurred on or around November 3 and November 6, 2025. The application did not work end-to-end. Put differently, Kasel could not complete an application from start to finish.

31. On November 6, 2025, Kasel emailed NAF to acknowledge the project was materially off-track and to propose a new path forward. Kasel stated "a lot has changed since our initial scope of this feature" and took "some responsibility for underestimating the work required." Kasel represented he was "at ~140 hours so far," acknowledged the parties "had agreed to a flat $20k to get this to launch," and stated there was "easily . . . another 100-120 hours to get this ALL done." Kasel enumerated fourteen outstanding deliverables necessary to complete the launch scope, together with six additional "nice to haves / other go-live things."

32. On November 7, 2025, NAF responded and stated NAF had paid $74,500 on the project to date — for "a little over 370 hours of work" — which was "well beyond" the 230-hour upper estimate Kasel set himself. NAF identified the core work still outstanding: the digital loan application, the application's underlying logic, and the integration with the lending partner's system. NAF detailed the November 15 scope — an application flow matching the agreed designs, integrated pre-approval process, basic co-borrower functionality, a reliable data handoff to the lending partner and basic dashboard for applicants showing application status, and identified the items that would wait for Phase 2. NAF stated the company was "not in a position to approve additional open-ended hours or another 100–120 hours of work on top of what has already been done," and the "baseline expectation is that the November 15

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

**SEELEY LLC**
1459 18th St. #174
San Francisco, California 94107

scope described above is delivered within the budget that has already been invested." NAF requested Kasel confirm in writing the total hours he had billed to date and the additional hours he believed were strictly necessary to deliver the November 15 scope.

33. The November 15, 2025 launch date passed, and Kasel did not deliver a functioning application. NAF reduced the scope a second time.

34. On December 23, 2025, because Kasel has still been unable to create a functioning application, NAF reduced the launch scope a third time to an online form where applicants enter basic information, have a prequalification check, and are provided with the opportunity to schedule a follow-up with NAF staff. NAF confirmed this in writing to Kasel, directed all other work stop "effective immediately," and set a new early January 2026 launch target. Kasel did not object.

35. Despite these successive scope reductions — each driven by one of Kasel's failures and accompanied by his assurances the narrower version would work — the application still did not function. In early January 2026, based on Kasel's assurances the application was ready, NAF went to market. The application did not function as represented, and NAF was forced to take it offline within days.

36. Kasel terminated the Agreement on January 28, 2026, and NAF accepted the termination effective the same day.

37. NAF's replacement developer delivered a functioning minimum viable application within approximately one week of engagement. None of Kasel's work product was used.

**The Administrative Panel and Lost Lead Data**

38. During the engagement, Kasel built an administrative panel as part of the scope of work under Exhibit A. The panel captured information from prospective borrowers who visited NAF's website and submitted information.

39. While NAF had access to the administrative panel, the panel reflected more than $40 million in loan amounts requested by prospective borrowers. This figure is documented in a contemporaneous screenshot of the panel taken during the

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

engagement. The $40 million figure represents the aggregate amount prospective borrowers requested; it does not represent loans NAF connected to lending partners. The figure is indicative of the volume of borrower interest NAF was generating and of the prospective borrower relationships NAF lost when Kasel denied access. The data this panel collected is NAF's property under the Agreement and the CIIAA.

40.     Kasel has denied, and continues to deny, NAF access to the administrative panel and the data it contains. NAF has been unable to recover a portion of this data and has lost prospective borrower relationships as a result.

**Wasted Expenditure on Advertising, Services, and Vendors**

41.     In reliance on Kasel's representations the application worked, NAF expended resources. NAF paid for advertising to drive prospective borrowers to the application, subscribed to services related to working with prospective borrowers and applicants, and contracted with vendors to support operations. The application never functioned as Kasel represented it would during the periods NAF was paying for advertising, services, and vendors. The interest the advertising generated was lost, and the money NAF paid for advertising, services, and vendors was wasted.

**The February 5, 2026 Vercel Incident**

42.     Vercel is a cloud-based hosting and deployment service. Kasel used Vercel to develop and host NAF's application. The application was hosted on Vercel's servers — physical and virtual computers located in data centers and used in interstate commerce. Kasel created the Vercel account. It was created in and titled with NAF's name, was used for NAF's business, and billed to NAF. NAF paid all account charges from July 2025 forward.

43.     On February 4 and February 5, 2026, Kasel sent NAF a series of emails and text messages requesting NAF accelerate payments to him. Kasel cited his need to pay rent and characterized his request as "a favor." NAF declined. Sixteen minutes after NAF's final email on the topic on February 5, 2026, Kasel sent an email stating: "Good luck with your new devs. Hopefully India works out well."

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

44. On information and belief, at or around the time he sent the above-quoted email, Kasel manipulated the permissions on the Vercel account, demoting the NAF team members who had held administrative access, while retaining elevated access for himself and a third-party developer.

45. This conduct occurred after Kasel's termination of the Agreement, during the transition period, and within hours of NAF's written denial of his accelerated-payment request. Kasel had no authorization to demote NAF administrative access. On information and belief, the manipulation was deliberate and designed to exert leverage over NAF in connection with his request for accelerated payment.

46. Kasel claimed the permissions change was "accidental," stating in a text message to NAF he "was trying to remove [him]self from the account" and "if any access changed it was accidental, not intentional." That is not credible. Demoting specific users from administrative access in Vercel's interface requires multiple deliberate steps and cannot be accomplished as a side effect of removing a single user.

47. NAF recovered administrative access through the third-party developer.

**Kasel's Failure to Return Company Property and Sign the Required Certification**

48. Section 5 of the CIIAA required Kasel, upon termination, to deliver to NAF all NAF materials. Section 6 required Kasel to execute and deliver a Termination Certification at termination. The Termination Certification, by its terms, certifies post-termination conditions: Kasel has returned all NAF property and retained no NAF Confidential Information.

49. Although Kasel signed the form Termination Certification at the outset of the engagement on May 2, 2025, that does not satisfy Section 6. Section 6 requires execution at termination, when the certifications can actually be made. A signature applied before any services were rendered cannot certify post-termination compliance with obligations that had not yet arisen.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

50.     Kasel has not delivered NAF's property as Section 5 requires — including the administrative panel and the data it contains. Kasel has not executed and delivered a Termination Certification since his January 28, 2026 termination of the Agreement as CIIAA Section 6 requires.

## FIRST COUNTERCLAIM

### (Breach of Contract — Consulting Agreement)

51.     NAF incorporates by reference Paragraphs 1 through 50 of these Counterclaims.

52.     NAF and Kasel entered into the Agreement on or about May 2, 2025. The Agreement is a valid and enforceable contract supported by mutual consideration.

53.     NAF performed its obligations under the Agreement, including by paying Kasel $84,047 over the course of the engagement.

54.     Kasel breached the Agreement by: (a) failing to use his best efforts to perform the Services such that results were satisfactory to NAF, as required by Section 1; (b) delivering materially deficient work product failing to meet the specifications in Exhibit A; and (c) billing more than double the maximum estimated hours and taking more than four times the estimated timeline without delivering a functioning application.

55.     As a direct and proximate result of Kasel's breaches, NAF has suffered damages in an amount to be proven at trial, including the $84,047 paid for materially deficient work product and costs of engaging a replacement developer.

56.     NAF has also suffered consequential damages, including (a) lost revenue resulting from Kasel's failure to deliver a functioning application within the timeline specified in Agreement Exhibit A; (b) wasted advertising and operational expenditures incurred in reliance on Kasel's representations the application was functional; and (c) the value of lost leads and prospective borrower relationships.

57.     NAF will prove these amounts at trial based on NAF's actual post-launch performance and advertising records.

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

## SECOND COUNTERCLAIM

### (Breach of Contract — CIIAA)

58.     NAF incorporates by reference Paragraphs 1 through 57 of these Counterclaims.

59.     NAF and Kasel entered into the CIIAA on or about May 2, 2025, as required by Section 9 of the Agreement. The CIIAA is a valid and enforceable contract supported by mutual consideration.

60.     Kasel breached the CIIAA by: (a) failing to deliver all company property, records, and data upon termination as required by Section 5; (b) failing to execute the Termination Certification as required by Section 6; and (c) manipulating the permissions on NAF's Vercel account on February 5, 2026 in a manner that denied NAF administrative access to Company records, data, and other property — including NAF's source code, deployment configurations, and development records — in breach of (i) Section 5 of the CIIAA, which required Kasel to deliver to NAF at termination, and not keep in his possession, all "devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, laboratory notebooks, materials, flow charts, equipment, other documents or property" developed pursuant to the Relationship or otherwise belonging to NAF, and (ii) Section 3(a) of the CIIAA, which prohibits Kasel from using Confidential Information "except for the benefit of the Company to the extent necessary to perform the Services." Kasel's manipulation of the Vercel account was designed to exert leverage over NAF in connection with his request for accelerated payment — a use not for the Company's benefit.

61.     Kasel's breaches of the CIIAA are continuing. As of the filing of these Counterclaims, Kasel has not returned NAF's property as required by Section 5, has not signed or delivered a Termination Certification following his January 28, 2026 termination of the Agreement as required by Section 6, and continues to deny NAF access to Company records — specifically, the lead data in the administrative panel.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

62.     Kasel's continuing refusal to return or provide access to the administrative panel lead data, together with his temporary disruption of NAF's Vercel access on February 5, 2026, breaches (i) Section 5 of the CIIAA, which required Kasel to deliver to NAF at termination and "not keep in Consultant's possession, recreate or deliver to anyone else" any and all "devices, records, data... lists... other documents or property" developed pursuant to the Relationship or otherwise belonging to NAF, and (ii) Section 3(a) of the CIIAA, which prohibits Kasel from using Confidential Information "except for the benefit of the Company to the extent necessary to perform the Services." Kasel's February 5, 2026 Vercel manipulation was designed to exert leverage over NAF. On information and belief, Kasel's continuing retention of and denial of access to the administrative panel lead data serves the same purpose — to exert leverage over NAF in connection with this dispute — and is not for the Company's benefit.

63.     As a direct and proximate result of Kasel's breaches of the CIIAA, NAF has suffered and continues to suffer damages in an amount to be proven at trial, including:

    a.    costs incurred to secure NAF's systems following the February 5, 2026 Vercel incident and to restore NAF's administrative access to its own application;

    b.    costs of investigating whether Kasel retained, misappropriated, or disseminated NAF's Confidential Information or Company Inventions, including the costs of the technical assessment performed by NAF's replacement developer;

    c.    the value of Company records and Confidential Information to which Kasel continues to deny NAF access, including the lead data in the administrative panel;

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

d.      lost prospective borrower relationships and associated lost fee revenue arising from NAF's inability to access or act on the lead data in the administrative panel;

e.      costs incurred to create new work product that Kasel failed to return as required by Sections 5 and 6; and

f.      such other consequential damages as NAF will prove at trial.

64.      In addition to damages, NAF is entitled under Section 12(f) of the CIIAA to injunctive relief without bond (or on the nominal $1,000 bond provided for in Section 12(f)) to compel Kasel's compliance with the CIIAA, including the return of all Company property and records under Section 5, the execution of the Termination Certification required by Section 6, and the restoration of NAF's full access to Company records under Section 5.

## THIRD COUNTERCLAIM
## (Fraudulent Inducement)

65.      NAF incorporates by reference Paragraphs 1 through 64 of these Counterclaims.

66.      In Section 1 of the Agreement, Kasel represented to NAF he "is duly licensed (as applicable) and has the qualifications, the experience and the ability to properly perform the Services."

67.      These representations were false when made. Kasel did not possess the qualifications or experience to build the application described in Exhibit A, as evidenced by his subsequent inability, over nine months and $84,047 in payments, to deliver a functioning application.

68.      On information and belief, Kasel knew these representations were false, or made them with reckless disregard for their truth, at the time he made them.

69.      Kasel intended NAF to rely on these representations in entering into the Agreement and paying for his services.

DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

70.    NAF justifiably relied on these representations. No one at NAF is a software developer. NAF relied on Kasel's claimed expertise to assess whether he could competently perform the work.

71.    As a direct and proximate result of Kasel's fraudulent misrepresentations, NAF paid Kasel $84,047  for work product that was materially deficient and not the product of the professional expertise Kasel represented he possessed.

72.    NAF has also suffered consequential damages, including lost revenue resulting from Kasel's failure to deliver a functioning application. NAF's market entry was delayed by months as a direct result of Kasel's fraud. NAF also incurred costs to engage a replacement developer to build the application Kasel failed to deliver. NAF will prove the amount of lost revenue and remediation costs at trial based on NAF's actual post-launch performance.

73.    Kasel acted with oppression, fraud, and malice within the meaning of California Civil Code Section 3294, warranting punitive damages.

## FOURTH COUNTERCLAIM

### (Intentional Misrepresentation — Ongoing)

74.    NAF incorporates by reference Paragraphs 1 through 73 of these Counterclaims.

75.    Throughout the engagement, Kasel made ongoing affirmative representations to NAF — in writing and orally — about the status, quality, and progress of his work. These representations followed a consistent pattern: Kasel would commit to a launch date, represent the application was nearly complete, miss the date, and then represent that more time and more money would deliver the application. Each cycle was followed by additional billing.

76.    Kasel committed to four launch dates over the course of the engagement: mid-June 2025, August 1, 2025, November 15, 2025, and early January 2026. He missed all four.

**Mid-June 2025 Launch Date**

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

77. On April 30, 2025, before the parties executed the Agreement, Kasel represented that NAF's "goal is to have phase 1, and phase 2 complete by ~mid June if not sooner." NAF entered the Agreement based in part on that representation.

78. Mid-June 2025 came and went. The application did not launch.

79. On June 25, 2025, in his Invoice #004 email, Kasel represented the project was "tracking on schedule." That representation was false when made — NAF's mid-June target had already passed.

**August 1, 2025 Launch Date**

80. On July 12, 2025, in his Invoice #005 email, Kasel represented he was "moving a lot of things that were at 80 & 90% to the done category" and that NAF could "hit our August 1 goals," with only approximately eight hours and marketing automation remaining. Kasel attached a completion chart reporting nearly all Phase 1 categories at 100%.

81. August 1, 2025 came and went. The application did not launch.

82. Kasel continued to bill NAF for additional 50-hour retainers after August 1, 2025.

**November 15, 2025 Launch Date**

83. On October 7, 2025, Kasel issued Invoice #0006, labeled "Final Stages of Production (50% payment)," representing that $20,000 would conclude the work and the application would launch by November 15, 2025. NAF paid the first $10,000 on October 8, 2025.

84. On or around November 3 and November 6, 2025, Kasel attempted two demonstrations of the application. Both failed. The application did not work end-to-end.

85. Throughout this period, including after the failed demonstrations, Kasel continued to assure NAF the application was on track and would be ready for the November 15, 2025 launch.

86. Kasel continued to bill and NAF paid $10,000 on November 13, 2025.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

87. November 15, 2025 came and went. The application did not launch.

88. NAF paid $1,874 on December 10, 2025. Across the three payments against Invoice #0006, NAF paid Kasel a total of $21,874 — exceeding by $1,874 the $20,000 Kasel represented would conclude the work.

**Early January 2026 Launch Date**

89. On January 9, 2026, Kasel represented in writing to NAF that NAF was "over the hump and launched," that $18,600 in additional work would conclude the engagement, and that he "won't go over that number."

90. The representation that NAF was "over the hump and launched" was false. The application went live briefly in early January 2026, failed, and had to be taken down within days because it did not function as Kasel had represented.

91. Within six days of Kasel's January 9 representation, NAF directed Kasel in writing to reduce the scope of the application again.

92. On January 28, 2026, Kasel terminated the Agreement. NAF accepted the termination effective the same day. The application Kasel was retained to build was never functional.

**Falsity, Knowledge, Intent, and Reliance**

93. Each of Kasel's representations identified above was false when made. Kasel knew the application was not progressing as represented, knew the code he was delivering was materially deficient, and knew the timelines and budgets he was committing to could not be met.

94. Kasel made these misrepresentations to induce NAF to continue paying successive 50-hour invoices beyond the scope and cost he had represented would be required.

95. NAF justifiably relied on Kasel's representations. No one at NAF is a software developer, and NAF had no independent means of verifying Kasel's status

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

reports. NAF continued to authorize successive payments based on Kasel's assurances that the next payment would bring the engagement to completion.

**Damages**

96. As a direct and proximate result of Kasel's intentional misrepresentations, NAF paid Kasel $84,047 for work product that did not deliver a functioning application.

97. NAF also suffered consequential damages, including (a) lost revenue resulting from delayed market entry, (b) costs of engaging a replacement developer to build the application Kasel failed to deliver, and (c) wasted expenditures on advertising, services, and vendors made in reliance on Kasel's representations the application was functional. NAF will prove these damages at trial based on NAF's post-launch performance, advertising records, service subscriptions, and vendor invoices.

98. Kasel acted with oppression, fraud, and malice within the meaning of California Civil Code Section 3294, warranting punitive damages.

## FIFTH COUNTERCLAIM

### (Conversion)

99. NAF incorporates by reference Paragraphs 1 through 98 of these Counterclaims.

100. NAF has an immediate right to possession of identifiable property, including: (a) the lead data in the administrative panel; and (b) all work product, records, documents, and data developed by Kasel in connection with the Services, as defined and assigned to NAF under Sections 4 and 5 of the CIIAA. The lead data is stored in an identifiable, definable form on NAF's behalf and is capable of exclusive possession and control.

101. On February 5, 2026, Kasel intentionally and without authorization manipulated permissions on the Vercel account that hosted NAF's application, demoting NAF personnel and denying NAF access to its property. Kasel has since

failed to return or restore NAF's property, including the lead data in the administrative panel.

102. Kasel's conduct substantially interfered with NAF's right to possession. The interference was wrongful when it occurred and has continued through the present.

103. As a direct and proximate result of Kasel's conversion, NAF has suffered damages in an amount to be proven at trial, including the value of the lead data and work product converted, costs reasonably and necessarily incurred to recover and secure NAF's systems and property, lost prospective borrower relationships, and time and money properly expended in pursuit of NAF's property, recoverable under California Civil Code Section 3336.

104. Kasel acted with oppression, fraud, and malice within the meaning of California Civil Code Section 3294, warranting punitive damages.

## SIXTH COUNTERCLAIM

### (Violation of California Penal Code § 502)

105. NAF incorporates by reference Paragraphs 1 through 104 of these Counterclaims. As described above, NAF's application was hosted on Vercel's servers — protected computers used in interstate commerce. NAF's Vercel account was created in and titled with NAF's name, was used for NAF's business, and billed to NAF. NAF paid all account charges from July 2025 forward. NAF was an authorized user of its account and of its loan application. On February 5, 2026, Kasel accessed these servers through the Vercel account interface and knowingly manipulated account permissions to demote NAF personnel and deny NAF access to its application. Whatever the scope of Kasel's permission on February 5, 2026, that permission did not extend to disrupting NAF's access to the Vercel account, demoting NAF's administrative access, or denying NAF access as an authorized user. Kasel's conduct therefore violated California Penal Code Section 502(c)(5), which prohibits

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

knowingly and without permission disrupting or denying computer services to an authorized user of a computer, computer system, or computer network.

106. Kasel separately violated Section 502(c)(5) by continuing to deny NAF access to the administrative panel — a component of NAF's computer system that contains NAF's lead data. NAF is an authorized user of the administrative panel and of the data it contains. Kasel has no authority, contractual or otherwise, to control NAF's access to NAF's own computer system or data. Kasel's continuing refusal to restore NAF's access knowingly and without permission denies computer services to an authorized user, in violation of Section 502(c)(5), and constitutes a continuing violation as of the filing of these Counterclaims.

107. NAF is entitled to compensatory damages under California Penal Code Section 502(e), including: (a) expenditures reasonably and necessarily incurred to verify its computer systems were not compromised, to restore access, to secure NAF's systems against further unauthorized conduct, and to engage a replacement developer as a consequence of the February 5, 2026 disruption; and (b) the value of the lead data in the administrative panel and the prospective borrower relationships lost as a result of Kasel's continuing denial of NAF's access. NAF is further entitled to injunctive relief under Section 502(e) to compel Kasel to restore NAF's access to the administrative panel, and to reasonable attorney's fees under Section 502(e).

## SEVENTH COUNTERCLAIM

### (Unjust Enrichment / Money Had and Received)

108. NAF incorporates by reference Paragraphs 1 through 107 of these Counterclaims.

109. NAF pleads this counterclaim in the alternative to the extent the Agreement does not fully address the claims set forth herein.

110. NAF paid Kasel $84,047 during the engagement.

Case No. 2:26-cv-04310-RGK-DSR

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

111. Kasel's work product was materially deficient and did not deliver the value for which NAF bargained. NAF no longer uses any work product Kasel produced because it was not usable.

112. Kasel has also retained possession of and denied NAF access to NAF's lead data.

113. It would be unjust and inequitable for Kasel to retain amounts paid for services not competently performed and to retain NAF's property.

114. NAF is entitled to restitution of all or a portion of the amounts paid to Kasel and return of all NAF property in his possession, in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, NAF prays for judgment as follows on NAF's Counterclaims:

115. On the First Counterclaim (Breach of Contract — Consulting Agreement), compensatory damages in an amount to be proven at trial, including the $84,047 paid for materially deficient work product, costs of finding and engaging a replacement developer, wasted advertising and operational expenditures, the value of lost leads and prospective borrower relationships, and consequential damages including lost revenue from delayed market entry;

116. On the Second Counterclaim (Breach of Contract — CIIAA),

    a.    compensatory damages in an amount to be proven at trial, including costs of securing NAF's systems following the February 5, 2026 Vercel incident and restoring NAF's administrative access; costs of investigating whether Kasel retained, misappropriated, or disseminated NAF's Confidential Information or Company Inventions; the value of Company records and Confidential Information to which Kasel continues to deny NAF access, including the lead data in the administrative panel; lost prospective borrower relationships and associated lost fee revenue; and costs

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

incurred to reconstruct, recreate, or work around records, configurations, and work product Kasel has failed to return under Sections 5 and 6 of the CIIAA;

    b.    injunctive relief pursuant to Section 12(f) of the CIIAA, without bond (or on the nominal $1,000 bond provided for in Section 12(f)), to compel Kasel's compliance with the CIIAA, including the return of all Company property and records under Section 5, execution of the Termination Certification required by Section 6, and restoration of NAF's full access to Company records under Section 5;

117.    On the Third Counterclaim (Fraudulent Inducement), compensatory damages in an amount to be proven at trial, including the $84,047 paid based on fraudulent misrepresentations, costs of engaging a replacement developer, and consequential damages including lost revenue from delayed market entry, plus punitive damages under California Civil Code Section 3294;

118.    On the Fourth Counterclaim (Intentional Misrepresentation — Ongoing), compensatory damages in an amount to be proven at trial, including the $84,047 paid to Kasel based on his ongoing misrepresentations regarding the status, quality, and progress of his work, costs of engaging a replacement developer, wasted expenditures on advertising, services, and vendors, and consequential damages including lost revenue from delayed market entry, plus punitive damages under California Civil Code Section 3294;

119.    On the Fifth Counterclaim (Conversion), compensatory damages in an amount to be proven at trial, including the value of the property converted, costs reasonably and necessarily incurred under California Civil Code Section 3336, lost prospective borrower relationships, and consequential damages, plus punitive damages under California Civil Code Section 3294;

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

120.    On the Sixth Counterclaim (Violation of California Penal Code § 502), compensatory damages under California Penal Code Section 502(e), including the costs of responding to the February 5, 2026 incident and the value of the lead data and prospective borrower relationships lost as a result of Kasel's continuing denial of access to the administrative panel; injunctive relief under Section 502(e) to compel Kasel to restore NAF's access; and reasonable attorney's fees under Section 502(e);

121.    On the Seventh Counterclaim (Unjust Enrichment / Money Had and Received), pleaded in the alternative, restitution of all or a portion of the $84,047 paid to Kasel;

122.    NAF does not seek duplicative recovery; amounts shared across multiple Counterclaims are sought once, and NAF reserves the right to elect its remedy on alternative theories at an appropriate stage of this litigation;

123.    Pre-judgment and post-judgment interest as allowed by law;

124.    Costs of suit incurred herein;

125.    Reasonable attorney's fees to the extent authorized by contract or statute, including California Penal Code Section 502(e); and

126.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

NAF demands a trial by jury on all issues so triable.

Dated: July 14, 2026

SEELEY LLC

By:    /s/ Ashley C. Seeley
Ashley C. Seeley (State Bar No. 270530)
Attorney for Defendant and
Counterclaimant National Ag Finance
Inc.

SEELEY LLC
1459 18th St. #174
San Francisco, California 94107

43    Case No. 2:26-cv-04310-RGK-DSR
**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

## CERTIFICATE OF SERVICE

I work in San Francisco County, California, am over the age of eighteen years, and am not a party to this action. My business address is 1459 18th Street #174, San Francisco, California 94107.

On July 14, 2026, I served the following document by placing a true and correct copy in a sealed envelope on the person below as follows:

**DEFENDANT AND COUNTERCLAIMANT
NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED
COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

on the following interested party:

Plaintiff William Kasel, *Pro Se*
946 3rd Street
Hermosa Beach, California 90254

by U.S. Mail. (Fed. R. Civ. P. 5(b)(2)(C).) I deposited a true and correct copy of the foregoing document in a sealed envelope, with postage fully prepaid, in the United States Mail in San Francisco County, California, addressed as set forth above.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on July 14, 2026, at San Francisco, California.

SEELEY LLC

By:    */s/ Ashley C. Seeley*
       Ashley C. Seeley (State Bar No. 270530)

       Attorney for Defendant and
       Counterclaimant National Ag Finance
       Inc.

**DEFENDANT AND COUNTERCLAIMANT NATIONAL AG FINANCE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**