

FILED

CLERK, U.S. DISTRICT COURT

07/10/2026

CENTRAL DISTRICT OF CALIFORNIA

BY ___GSA___ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

William Kasel
946 3rd Street
Hermosa Beach, California 90254
Telephone: (415) 818-6348
Email: wkasel@gmail.com
Plaintiff and Counter-Defendant, Pro Se

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| WILLIAM KASEL, an individual, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL AG FINANCE INC., a Delaware corporation; JOSHUA J. MITCHEY, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:26-cv-04310-RGK (DSRx) <br><br> NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER TO COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF WILLIAM KASEL <br><br> [Fed. R. Civ. P. 15(a)(2)] <br><br> Hearing: Aug. 10, 2026, 9:00 a.m. Courtroom 850, Roybal |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 10, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 850 of the United States District Court for the Central District of California, Roybal Federal Building, 255 East Temple Street, Los Angeles, California, before the

Honorable R. Gary Klausner, Plaintiff and Counter-Defendant William Kasel, appearing pro se, will and hereby does move for leave to file a First Amended Answer to Defendant National Ag Finance Inc.'s Counterclaims pursuant to Federal Rule of Civil Procedure 15(a)(2).

This Motion seeks leave to add one affirmative defense (the Twenty-Seventh Affirmative Defense) to Plaintiff's Answer to NAF's Counterclaims. The proposed First Amended Answer, attached as Exhibit A, is otherwise identical to the operative Answer in all substantive respects, and includes only non-substantive conforming updates to reflect the current procedural posture (the trial date now set, and the removal of references to since-resolved motions).

Plaintiff made the available good-faith conferral under Local Rule 7-3 during the compressed period created by the Court's July 10, 2026 pleading-amendment deadline (Dkt. 26): Plaintiff conferred by electronic mail on July 7, 2026, and NAF responded on July 9, 2026, declining to stipulate. Plaintiff files this Motion within that period to preserve the amendment; Plaintiff remains willing to discuss the matter at the parties' July 14, 2026 conference and will withdraw this Motion as moot if the parties reach agreement or if Defendants file amended counterclaims or another pleading that creates a new responsive-pleading window. This Motion is based on this Notice, the following

Memorandum, the Declaration of William Kasel and its exhibits, the [Proposed] Order lodged herewith, the records on file, and any argument the Court may permit.

Dated: July 9, 2026

William Kasel
Plaintiff and Counter-Defendant, Pro Se

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff seeks leave to add one affirmative defense to NAF's Counterclaims: if Plaintiff is found to have been NAF's employee, California law bars NAF, in whole or in part, from shifting ordinary business losses to Plaintiff or setting off claimed losses against his earned wages. The defense adds no new facts, claims, or parties; it follows from the employee-versus-contractor issue already central to the pleadings. Plaintiff sought NAF's stipulation before the July 10, 2026 deadline to amend the pleadings set by the Court's Order for Jury Trial (Dkt. 26); NAF declined. Plaintiff now moves promptly and within that deadline. Because Rule 15(a)(2) directs that leave be freely given and NAF suffers no prejudice, the Motion should be granted.

### II. RELEVANT BACKGROUND

NAF filed its Answer and Counterclaims on April 30, 2026 (Dkt. 8). Plaintiff filed his Answer to NAF's Counterclaims on May 26, 2026, asserting

twenty-six affirmative defenses. In preparing his discovery responses, Plaintiff identified that his Answer had not expressly pleaded the affirmative defense arising from his status as NAF's employee. That defense is grounded in established law: an employer may not recover from, or shift to, an employee losses arising from the employee's ordinary performance of duties absent dishonesty, willfulness, or a culpable degree of negligence (Cal. Lab. Code sections 221 and 2865; Hudgins v. Neiman Marcus Group, Inc., 34 Cal. App. 4th 1109 (1995)); nor may an employer set off its claimed losses against earned but unpaid wages (Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1 (1981)). Whether Plaintiff was an employee is already the central disputed question in this action.

On July 7, 2026, Plaintiff conferred with defense counsel by email and requested a stipulation permitting the amendment, setting out the proposed defense. (Kasel Decl. paragraphs 3-4, Ex. B.) On July 9, 2026, defense counsel responded that Defendants do not stipulate and reserve all rights as to any motion. (Id. paragraph 5, Ex. B.) Plaintiff files this Motion on or before the July 10, 2026 deadline to amend the pleadings set by the Court's Order for Jury Trial (Dkt. 26).

III. LEGAL STANDARD

Rule 15(a)(2) provides that a court should freely give leave when justice so requires. The Supreme Court has instructed that leave should be granted absent a substantial reason such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). The Ninth Circuit applies this policy with extreme liberality, and prejudice to the opposing party is the touchstone of the inquiry under Rule 15(a). Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003).

## IV. ARGUMENT

### A. Every Foman factor favors leave.

There has been no undue delay: Plaintiff answered the Counterclaims approximately six weeks ago, fact discovery has only begun, no depositions have been taken, and trial is not until January 26, 2027. There is no bad faith or dilatory motive; Plaintiff seeks a single, good-faith defense and moved immediately upon identifying the omission. This is Plaintiff's first request to amend his Answer. The amendment is not futile: Sections 221 and 2865, together with Hudgins and Barnhill, state established California law directly applicable if Plaintiff proves the employee status he already alleges. And there is no prejudice, as shown below.

**B. Defendants suffer no prejudice, the touchstone of the inquiry.**

Prejudice is the touchstone under Rule 15(a), Eminence Capital, 316 F.3d at 1052, and none exists here. The amendment adds no new facts, no new claims, and no new parties; it adds a single legal defense that turns on the employee-versus-contractor question already squarely joined by the pleadings and which Defendants must litigate regardless. It requires no additional discovery and no change to any schedule. Because the classification issue is already in the case, Defendants cannot claim surprise or burden from a defense that follows from it as a matter of law.

**C. The Motion is timely, and to the extent Rule 16 applies, good cause exists.**

The Court's Order for Jury Trial (Dkt. 26) sets July 10, 2026 as the last day to file a motion to amend the pleadings, and Plaintiff files within that deadline. A party who timely moves for leave has sought to amend within the deadline even if the motion is heard afterward. To the extent Rule 16(b)(4) applies, good cause is shown: Plaintiff acted diligently, identifying the omission while preparing his discovery responses, conferring immediately, and moving within the deadline. Plaintiff respectfully requests that the Court deem the First Amended Answer filed as of the date of this Motion.

**D. No ground for denial is present.**

The record shows no undue delay, bad faith, repeated failure to cure, prejudice, or futility. The amendment adds a single defense that is valid in part as to at least the contract-based and restitution counterclaims; a defense need not be a complete defense to every counterclaim to be properly pleaded, and its partial reach does not render it futile. Under the liberal standard of Rule 15(a)(2), leave should be granted.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to file the First Amended Answer to Counterclaims attached as Exhibit A, and deem it filed and served as of the date of this Motion.

Dated: July 9, 2026

William Kasel
Plaintiff and Counter-Defendant, Pro Se

### CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)

The undersigned, appearing pro se, certifies that the foregoing Memorandum of Points and Authorities contains 889 words, which complies with the word limit set by the Court's Standing Order and L.R. 11-6.1. The undersigned relied on the word-count feature of the word-processing program used to prepare this document.

### DECLARATION OF WILLIAM KASEL

I, William Kasel, declare as follows:

1.      I am the plaintiff and counter-defendant and appear pro se. I make this declaration in support of my Motion for Leave to File a First Amended Answer to Counterclaims. The matters stated are within my personal knowledge, and if called as a witness I could and would testify competently to them.

2.      I filed my Answer to NAF's Counterclaims on May 26, 2026, asserting twenty-six affirmative defenses. In preparing my discovery responses, I identified that my Answer did not expressly plead an affirmative defense arising from my status as NAF's employee, and I moved to correct that omission promptly.

3.      On July 7, 2026, I emailed defense counsel Ashley C. Seeley requesting that Defendants stipulate to my filing of a First Amended Answer adding a single affirmative defense, and setting forth the proposed defense verbatim.

4.      On July 9, 2026, defense counsel responded that Defendants do not stipulate to the proposed amendment and reserve all rights with respect to any motion for leave to amend. A true and correct copy of my July 7, 2026 email and counsel's July 9, 2026 response is attached as Exhibit B.

5.      A true and correct copy of the proposed First Amended Answer to Counterclaims is attached as Exhibit A. It is identical to my operative Answer in all substantive respects, except that it adds the Twenty-Seventh Affirmative

Defense and makes non-substantive conforming updates to reflect the current procedural posture.

6.      No depositions have been taken in this action, and fact discovery has recently begun. I have not previously sought to amend my Answer. I file the accompanying Motion on or before the July 10, 2026 deadline to amend the pleadings set by the Court's Order for Jury Trial (Dkt. 26).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 9, 2026, at Hermosa Beach, California.

_____

William Kasel
Plaintiff and Counter-Defendant, Pro Se

# EXHIBIT A

[Proposed] First Amended Answer to Counterclaims

William Kasel

946 3rd Street

Hermosa Beach, California 90254

Telephone: (415) 818-6348

Email: wkasel@gmail.com

Plaintiff and Counter-Defendant, Pro Se

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| WILLIAM KASEL, an individual, | **Case No. 2:26-cv-04310-RGK (DSRx)** |
| Plaintiff, | |
| v. | **PLAINTIFF AND COUNTER-DEFENDANT WILLIAM KASEL'S FIRST AMENDED ANSWER TO COUNTERCLAIMS, AFFIRMATIVE DEFENSES,** |
| NATIONAL AG FINANCE INC., a Delaware corporation; JOSHUA J. MITCHEY, an individual; and DOES 1 through 10, inclusive, | |

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

|  | AND |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Complaint Filed: March 6, 2026

NATIONAL AG FINANCE INC.,

Counterclaim Filed: April 30,

2026

Counterclaimant,

Trial Date: Jan. 26, 2027

v.

Hon. R. Gary Klausner

WILLIAM KASEL,

Counter-Defendant.

## I. INTRODUCTION

Counter-Defendant William Kasel ("Counter-Defendant" or "Plaintiff") hereby answers the Counterclaims of Counterclaimant National Ag Finance Inc. ("Counterclaimant" or "NAF") as set forth herein. Counter-Defendant denies

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

the seven counterclaims in their entirety and pleads the affirmative defenses set forth below. Counterclaimant's claims are barred, in whole or in part, by Counter-Defendant's prior performance, by Counterclaimant's own conduct and admissions, by Counterclaimant's failure to perform conditions precedent, and by the involvement of Counterclaimant's counsel as a necessary witness on material issues herein.

Except as expressly admitted, qualified, or stated to lack knowledge or information sufficient to form a belief, Counter-Defendant denies each and every allegation contained in the Counterclaims. Headings used by Counterclaimant are restated herein for ease of reference only; Counter-Defendant denies the characterizations contained in those headings and denies any allegations they purport to assert.

## II. GENERAL DENIAL REGARDING FEBRUARY 4-5, 2026 CONDUCT

Counter-Defendant denies any characterization of the events of February 4 and 5, 2026 as constituting unilateral or wrongful conduct by Counter-Defendant. The contemporaneous record will show coordinated transition activity initiated and supervised by Counterclaimant — including a structured handover process coordinated by Counterclaimant's officers, as Counterclaimant itself admits at Paragraph 21 of its Answer — together with

substantially contemporaneous and reciprocal access modifications by both parties. Counter-Defendant denies any allegation premised on a unilateral or wrongful characterization, however framed.

## III. PART I — RESPONSES TO COUNTERCLAIMS (PARAGRAPH-BY-PARAGRAPH)

**Jurisdiction and Venue**

1. The allegations in Counterclaim Paragraph 1 state legal conclusions to which no response is required. To the extent a response is required, Counter-Defendant admits that this Court presently has subject-matter jurisdiction over the action in its current procedural posture. Counter-Defendant preserves all appellate and post-judgment rights regarding jurisdiction and the Court's prior rulings. Counter-Defendant otherwise denies the allegations contained in Paragraph 1.

2. The allegations in Counterclaim Paragraph 2 state legal conclusions to which no response is required. To the extent a response is required, Counter-Defendant admits venue is presently proper in this Court in its current procedural posture. Counter-Defendant otherwise denies the allegations contained in Paragraph 2.

**Parties**

**3.** Counter-Defendant admits Counterclaimant is a Delaware corporation. Counter-Defendant admits, on information and belief, that Counterclaimant maintains a principal place of business in the State of Colorado. Counter-Defendant denies the remaining allegations of Paragraph 3 to the extent inconsistent with the foregoing.

**4.** Admitted that Counter-Defendant is an individual. Counter-Defendant admits he resides in Los Angeles County, California.

**Factual Allegations Common to All Counterclaims — The Contract**

**5.** The allegations in Paragraph 5 state characterizations of Counterclaimant's business operations to which Counter-Defendant lacks knowledge or information sufficient to form a belief and, on that basis, denies the allegations.

**6.** Counter-Defendant lacks knowledge or information sufficient to form a belief as to Counterclaimant's internal state at the time of the events alleged and, on that basis, denies the allegation. Counter-Defendant denies the remaining allegations of Paragraph 6, including any characterization that Counterclaimant could not "launch" but for Counter-Defendant's deliverables.

7. Denied. The allegation that Counterclaimant could not launch until Counter-Defendant delivered "a working version" is denied; Counterclaimant's launch decisions were within its own control throughout the engagement.

8. Counter-Defendant admits that he maintained an Upwork profile prior to the parties' May 2, 2025 Consulting Agreement and that the parties were initially introduced through that platform. Counter-Defendant denies any characterization that the parties' substantive engagement was conducted through Upwork; no consideration was exchanged between the parties through Upwork, and the parties' engagement was governed by the May 2, 2025 Consulting Agreement and the contemporaneous Confidential Information and Invention Assignment Agreement. Counter-Defendant denies any characterization that the Upwork platform is dispositive of any legal classification at issue.

9. Admitted that on or about May 2, 2025, Counter-Defendant and Counterclaimant entered into a Consulting Agreement (the "Agreement") and a Confidential Information and Invention Assignment Agreement ("CIIAA"). The Agreement and the CIIAA are writings and speak for themselves. Counter-Defendant denies any characterization inconsistent with those writings.

10. The Agreement is a writing and speaks for itself. Counter-Defendant denies any characterization inconsistent with its terms.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**11.** Section 1 of the Agreement is a writing and speaks for itself. Counter-Defendant denies any characterization inconsistent with its terms.

**12.** Exhibit A of the Agreement is a writing and speaks for itself. Counter-Defendant denies the characterization that the agreed scope was rigidly limited to "170 to 230 hours" exclusive of subsequent modifications, additions, and changes directed by Counterclaimant. Counter-Defendant otherwise denies the allegations of Paragraph 12 and its sub-parts to the extent inconsistent with the writing or with the parties' subsequent course of dealing.

**13.** Phase 1 scope described in Exhibit A is a writing and speaks for itself. Counter-Defendant denies the allegation that Phase 1 alone, or a subset of Phase 1, was unilaterally sufficient to support Counterclaimant's launch given Counterclaimant's own decisions regarding lending-partner integration and subsequent scope additions.

**14.** The CIIAA is a writing and speaks for itself. Counter-Defendant denies any characterization inconsistent with its terms.

**15.** Section 4 of the CIIAA is a writing and speaks for itself. Counter-Defendant denies the characterization to the extent it is inconsistent with the CIIAA. Counter-Defendant admits he executed the Termination Certification

(CIIAA Exhibit C) at the time of execution of the CIIAA and denies any allegation suggesting non-execution of that document.

16. Section 6 of the CIIAA is a writing and speaks for itself. Counter-Defendant admits he executed the Termination Certification at the outset of the engagement. Counter-Defendant denies Counterclaimant's characterization that Section 6 required a separate post-termination execution; the CIIAA is a writing and speaks for itself.

**Kasel's Deficient Performance**

17. Admitted that Counterclaimant paid Counter-Defendant $84,047 between April 2025 and January 2026. Counter-Defendant denies the characterization of those payments as "nearly double the 230-hour upper estimate"; the $84,047 figure does not account for scope modifications directed by Counterclaimant, scope additions agreed by the parties, and additional work performed at Counterclaimant's direction. Counter-Defendant denies the characterization of his work as not "competent" and denies the characterization that he did not "deliver a functioning Phase 1 application."

18. Denied. The allegation that Counter-Defendant's code "was materially deficient, poorly structured, and unable to function as a coherent application" is denied.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**Kasel's Pattern of Missed Commitments**

**19.** Denied. Counter-Defendant denies the characterization of the engagement as involving missed "commitments" or representations made in bad faith. To the extent communications and timelines are referenced, those communications speak for themselves; Counter-Defendant denies any characterization inconsistent with the writings.

**20.** To the extent Paragraph 20 references writings, those writings speak for themselves. Counter-Defendant denies all allegations inconsistent therewith.

**20(a).** Counter-Defendant admits sending the referenced April 30, 2025 communication. The communication is a writing and speaks for itself. Counter-Defendant denies any characterization inconsistent with the writing.

**20(b).** Counter-Defendant admits transmitting Invoice #002 in May 2025. The invoice and any accompanying chart are writings and speak for themselves.

**20(c).** Counter-Defendant admits transmitting Invoice #003 in June 2025. The invoice and any accompanying chart are writings and speak for themselves.

**20(d).** Counter-Defendant admits transmitting Invoice #004 in June 2025. The invoice and any accompanying communication are writings and speak for themselves. Counter-Defendant denies any characterization that any then-stated representation was "false when made."

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**20(e).** Counter-Defendant admits transmitting Invoice #005 in July 2025. The invoice and any accompanying communication are writings and speak for themselves. Counter-Defendant denies any characterization that any then-stated representation was false when made.

**20(f).** Counter-Defendant admits issuing Invoice #0006 on or about October 7, 2025. The invoice is a writing and speaks for itself. Counter-Defendant denies any characterization that the $20,000 figure was a hard cap or final commitment irrespective of subsequent scope changes initiated or directed by Counterclaimant, denies any characterization that the $20,000 figure represented a binding undertaking to "conclude the work" irrespective of such scope changes, and denies any characterization that Counter-Defendant made a binding contractual commitment that the application would launch by any specific date.

**20(g).** Counter-Defendant admits sending an email on or about January 9, 2026 to Counterclaimant. The email is a writing and speaks for itself. Counter-Defendant denies any characterization inconsistent with the writing.

**21.** Counter-Defendant admits he terminated the Agreement on January 28, 2026, and that Counterclaimant accepted the termination the same day.

**22.** Denied.

23. Denied. Counter-Defendant denies that any of his representations were "false when made"; denies that he "knew" any representation was false; and denies that he acted with reckless disregard for the truth of any representation.

24. Denied.

25. Counterclaimant's allegation that "no one at NAF is a software developer" is admitted on Counterclaimant's own statement. Counter-Defendant denies the allegation that Counterclaimant "relied" on any representations to the extent Counterclaimant had access to independent technical reviewers as Counterclaimant alleges elsewhere in its pleading.

**NAF's Progressive Scope Reductions**

26. Denied. Counter-Defendant denies the characterization of scope changes as caused by his "failures" and denies that he assured Counterclaimant a "narrower version would work" in any sense inconsistent with the parties' course of dealing.

27. Counter-Defendant admits Counterclaimant decided to change lending partners during the engagement. Counter-Defendant denies the remaining characterizations of Paragraph 27 and denies that lending-partner changes are properly attributed to his conduct.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**28.** Denied to the extent inconsistent with the writings and the parties' course of dealing.

**29.** Counter-Defendant admits that, in or around October 2025, Ross Ragsdale performed work on the National Ag Finance project as a third-party developer. Counter-Defendant denies any characterization that Mr. Ragsdale was a subcontractor of Counter-Defendant, and denies any characterization that Counterclaimant's payments to Mr. Ragsdale were routed through Counter-Defendant. Counter-Defendant denies the remaining characterizations of Paragraph 29.

**30.** Counter-Defendant admits that Counterclaimant targeted November 15, 2025 as a launch date. Counter-Defendant denies the characterization that the November 15 date was a binding contractual commitment by Counter-Defendant; communications regarding scheduling are writings and speak for themselves. Counter-Defendant denies any characterization of demonstrations as "failed" inconsistent with the contemporaneous record.

**31.** Counter-Defendant admits sending a communication on or about November 6, 2025. The communication is a writing and speaks for itself; Counter-Defendant denies any characterization that selectively quotes or omits material context from the writing.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**32.** Counterclaimant's November 7, 2025 communication is a writing and speaks for itself. Counter-Defendant denies any characterization inconsistent with the writing, and specifically denies that the "$74,500" figure was an established or undisputed amount; Counter-Defendant disputed the figure in writing in real time in the same email thread.

**33.** Denied to the extent inconsistent with the writings and the parties' course of dealing.

**34.** Communications referenced in Paragraph 34 are writings and speak for themselves. Counter-Defendant admits that scope was adjusted in or around December 23, 2025. Counter-Defendant denies that the scope adjustment was caused by his "failures" rather than by Counterclaimant's own decisions and project-management choices.

**35.** Denied.

**36.** Counter-Defendant admits he terminated the Agreement on January 28, 2026 and that Counterclaimant accepted the termination the same day.

**37.** Denied. Counter-Defendant denies each and every allegation contained in Paragraph 37.

### The Administrative Panel and Lost Lead Data

38. Admitted that Counter-Defendant built an administrative panel as part of the work product under Exhibit A.

39. Counter-Defendant lacks knowledge or information sufficient to form a belief as to the present content or quantification of data within Counterclaimant's administrative panel and, on that basis, denies the allegation. Counter-Defendant denies the characterization that any "$40 million" figure represents prospective borrower relationships lost as a result of his conduct, and denies any inference that the asserted figure reflects a contemporaneous or actuarially supportable quantification of any cognizable harm.

40. Denied. Counter-Defendant denies he has "denied" Counterclaimant access to the administrative panel or the data it contains. Counterclaimant itself admits at Counterclaim Paragraph 47 that it recovered administrative access through the third-party developer.

### Wasted Expenditure on Advertising, Services, and Vendors

41. Denied. Counter-Defendant denies that any advertising, services, or vendor expenditures were "wasted" as a result of his conduct, and denies the characterization of Counterclaimant's reliance.

## The February 5, 2026 Vercel Incident

**42.** Counter-Defendant admits he created the Vercel account, that the account was used for Counterclaimant's application, and that Counterclaimant has paid the account charges from July 2025 forward. Counter-Defendant denies any characterization of the Vercel account as not being created in Counter-Defendant's name.

**43.** Counter-Defendant admits sending communications to Counterclaimant on or about February 4 and 5, 2026 regarding payment, and admits that on February 5, 2026, sixteen minutes after Counterclaimant's denial of his accelerated-payment request, he sent a communication including the words referenced in Paragraph 43. The communications are writings and speak for themselves.

**44.** Denied.

**45.** Denied. Counter-Defendant denies the characterization that any access modifications were "deliberate" attempts "to exert leverage" or were made "without authorization." The events of February 4-5, 2026 occurred in the context of a transition process Counterclaimant itself acknowledges was coordinated by Counterclaimant's officers (Answer ¶ 21), during which both parties modified access to various systems.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

46. Counter-Defendant admits sending a contemporaneous text message to Counterclaimant's officers in substance reflecting that he was attempting to remove himself from the Vercel account and that any access changes were inadvertent rather than intentional. The communication is a writing and speaks for itself. Counter-Defendant denies the characterization that his contemporaneous statement was "not credible," and denies any characterization of the technical mechanics of administrative access modifications in Counterclaimant's Vercel account.

47. Admitted that Counterclaimant recovered administrative access through the third-party developer. Counter-Defendant denies the remaining characterizations of Paragraph 47.

**Kasel's Failure to Return Company Property and Sign the Required Certification**

48. Sections 5 and 6 of the CIIAA are writings and speak for themselves. Counter-Defendant denies any characterization inconsistent with the writings.

49. Counter-Defendant admits executing the Termination Certification (CIIAA Exhibit C) at the outset of the engagement. The CIIAA is a writing and speaks for itself. Counter-Defendant denies Counterclaimant's characterization

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

that the plain language of Section 6 required a separate post-termination execution distinct from the executed Termination Certification already on file.

50. Denied. Counter-Defendant denies he has retained NAF property in violation of any contractual or legal obligation, and denies that he has failed to deliver work product as required by the CIIAA. Counterclaimant has itself admitted at Paragraph 47 of its Counterclaim that Counterclaimant recovered administrative access through the third-party developer. To the extent Counter-Defendant retains materials relevant to this litigation, such retention is required by his evidence-preservation obligations, which attached not later than February 5, 2026.

**FIRST COUNTERCLAIM — Breach of Contract (Consulting Agreement)**

51. Counter-Defendant incorporates his responses to Paragraphs 1 through 50 as though fully set forth herein.

52. Admitted that the parties entered into the Agreement on or about May 2, 2025. The Agreement's terms speak for themselves.

53. Admitted that Counterclaimant paid Counter-Defendant $84,047 over the course of the engagement. Counter-Defendant denies the characterization that Counterclaimant fully performed its obligations under the Agreement; Counterclaimant breached its own obligations, including timely payment of

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

amounts owed, performance of conditions precedent, and the implied covenant of good faith and fair dealing.

54. Denied.

55. Denied.

56. Denied. Counter-Defendant denies the alleged consequential damages and denies any causal connection between his conduct and the alleged damages.

57. Denied.

**SECOND COUNTERCLAIM — Breach of Contract (CIIAA)**

58. Counter-Defendant incorporates his responses to Paragraphs 1 through 57 as though fully set forth herein.

59. Admitted that the parties entered into the CIIAA on or about May 2, 2025. The CIIAA's terms speak for themselves.

60. Denied.

61. Denied. Counter-Defendant specifically denies that any breach of the CIIAA is "continuing" as Counterclaimant alleges. Counterclaimant has admitted recovery of administrative access through the third-party developer (CC ¶ 47).

62. Denied.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

63. Denied. Counter-Defendant denies the alleged damages and denies any causal connection between his conduct and the alleged damages, including but not limited to the categories enumerated in sub-parts (a) through (f).

64. Denied. Counter-Defendant denies that Counterclaimant is entitled to injunctive relief, and denies the implied predicate that any threatened harm is irreparable, ongoing, or beyond compensation in monetary damages.

**THIRD COUNTERCLAIM — Fraudulent Inducement**

65. Counter-Defendant incorporates his responses to Paragraphs 1 through 64 as though fully set forth herein.

66. Section 1 of the Agreement is a writing and speaks for itself.

67. Denied.

68. Denied.

69. Denied to the extent of any allegation that Counter-Defendant intended any reliance on any representation alleged to be false.

70. Denied to the extent inconsistent with the writings and the contemporaneous record, including Counterclaimant's admitted engagement of independent technical reviewers (Answer ¶ 30) and Counterclaimant's admission at Counterclaim Paragraphs 70 and 95 that no individual at

Counterclaimant possessed software-development expertise to independently verify Counter-Defendant's representations.

71. Denied.

72. Denied. Counter-Defendant denies the alleged consequential damages and denies any causal connection between his conduct and the alleged damages.

73. Denied. Counter-Defendant denies that any conduct of his was undertaken with "oppression, fraud, or malice" within the meaning of Cal. Civ. Code § 3294, and denies entitlement to punitive damages on any basis.

**FOURTH COUNTERCLAIM — Intentional Misrepresentation (Ongoing)**

74. Counter-Defendant incorporates his responses to Paragraphs 1 through 73 as though fully set forth herein.

75. Denied.

76. Denied to the extent the allegation characterizes Counter-Defendant as having "committed" to specific launch dates without acknowledgment of scope modifications, scope additions, and project-management changes directed by Counterclaimant; communications regarding launch dates are writings and speak for themselves.

77. The referenced April 30, 2025 communication is a writing and speaks for itself.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**78.** Denied.

**79.** Counter-Defendant admits transmitting Invoice #004 in June 2025. The accompanying communication is a writing and speaks for itself. Denied to the extent inconsistent with the writing.

**80.** Counter-Defendant admits transmitting Invoice #005 in July 2025. The accompanying communication is a writing and speaks for itself. Denied to the extent inconsistent with the writing.

**81.** Denied to the extent the allegation characterizes a "launch" failure attributable to Counter-Defendant.

**82.** Counter-Defendant admits billing Counterclaimant subsequent to August 1, 2025 in accordance with the Agreement.

**83.** Counter-Defendant admits issuing Invoice #0006 on or about October 7, 2025. The invoice is a writing and speaks for itself.

**84.** Counter-Defendant denies the characterization that any demonstrations "failed" in the sense alleged.

**85.** Denied to the extent inconsistent with the contemporaneous record.

**86.** Admitted that Counter-Defendant continued to bill and that Counterclaimant paid $10,000 on or about November 13, 2025.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**87.** Denied to the extent the allegation characterizes the November 15 deadline as one Counter-Defendant committed to rather than one imposed by Counterclaimant.

**88.** Admitted that Counter-Defendant invoiced and Counterclaimant paid $1,874 on or about December 10, 2025.

**89.** The referenced January 9, 2026 communication is a writing and speaks for itself.

**90.** Denied.

**91.** Counterclaimant's communications regarding scope reductions are writings and speak for themselves.

**92.** Admitted that Counter-Defendant terminated the Agreement on January 28, 2026 and that Counterclaimant accepted the termination the same day. Denied to the extent the allegation characterizes the application as "never functional."

**93.** Denied.

**94.** Denied.

**95.** Counter-Defendant admits, on Counterclaimant's own statement, that no individual at Counterclaimant is a software developer. Counter-Defendant denies the characterization that Counterclaimant "justifiably relied" on

representations to the extent Counterclaimant engaged independent technical reviewers per Counterclaimant's own admission at Answer ¶ 30.

96. Denied.

97. Denied. Counter-Defendant denies the alleged consequential damages and denies any causal connection between his conduct and the alleged damages.

98. Denied. Counter-Defendant denies that any conduct of his was undertaken with "oppression, fraud, or malice" within the meaning of Cal. Civ. Code § 3294, and denies entitlement to punitive damages on any basis.

**FIFTH COUNTERCLAIM — Conversion**

99. Counter-Defendant incorporates his responses to Paragraphs 1 through 98 as though fully set forth herein.

100. Denied to the extent inconsistent with the CIIAA, which is a writing and speaks for itself.

101. Denied. Counter-Defendant denies that he "intentionally and without authorization manipulated permissions" or that he has "failed to return or restore" any property to which Counterclaimant has a present, lawful right of possession.

102. Denied.

**103.** Denied. Counter-Defendant denies the alleged conversion damages and denies any causal connection between his conduct and the alleged damages.

**104.** Denied. Counter-Defendant denies that any conduct of his was undertaken with "oppression, fraud, or malice" within the meaning of Cal. Civ. Code § 3294, and denies entitlement to punitive damages on any basis.

**SIXTH COUNTERCLAIM — Violation of California Penal Code § 502**

**105.** Counter-Defendant incorporates his responses to Paragraphs 1 through 104 as though fully set forth herein. Counter-Defendant admits that the Vercel infrastructure constituted servers used in interstate commerce, admits that he created the Vercel account, and admits that the account was billed to Counterclaimant from July 2025 forward. Counter-Defendant denies that any conduct of his on February 5, 2026 constituted "knowing" or "without permission" disruption of computer services to an authorized user within the meaning of Cal. Penal Code § 502(c)(5). Counter-Defendant further denies that Counterclaimant was an "authorized user" within the meaning of the statute with respect to a Vercel account created in and registered to Counter-Defendant.

**106.** Denied. Counter-Defendant denies that he has "continued to deny" Counterclaimant access to the administrative panel or any component of

Counterclaimant's computer system. Counterclaimant admits at Paragraph 47 of its Counterclaim that it recovered administrative access through the third-party developer.

107. Denied. Counter-Defendant denies the alleged § 502(e) damages, denies that the alleged investigative or restorative costs are cognizable § 502(e) loss, denies any causal connection between his conduct and the alleged costs, and denies entitlement to injunctive relief or attorney's fees under § 502(e).

**SEVENTH COUNTERCLAIM — Unjust Enrichment / Money Had and Received**

108. Counter-Defendant incorporates his responses to Paragraphs 1 through 107 as though fully set forth herein.

109. The pleading of unjust enrichment in the alternative is acknowledged as Counterclaimant's pleading choice.

110. Admitted that Counterclaimant paid Counter-Defendant $84,047 during the engagement.

111. Denied. Counter-Defendant denies each and every allegation contained in Paragraph 111.

112. Denied.

113. Denied.

**114.** Denied. Counter-Defendant denies that Counterclaimant is entitled to restitution of any amount paid to Counter-Defendant or to return of any NAF property.

## IV. PART II — AFFIRMATIVE DEFENSES

Without waiving or limiting any of the foregoing responses, and without assuming the burden of proof on any issue on which Counterclaimant bears the burden, Counter-Defendant asserts the following affirmative defenses. Counter-Defendant expressly reserves the right to amend and to assert additional affirmative defenses upon further investigation and discovery.

**FIRST AFFIRMATIVE DEFENSE (Failure to State a Claim).** The Counterclaims, and each of them, fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). This defense is preserved under Fed. R. Civ. P. 12(h)(2). Counterclaimant's claims are barred, in whole or in part, under controlling authorities including *Van Buren v. United States*, 593 U.S. 374 (2021), *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004), and *McBride v. Boughton*, 123 Cal. App. 4th 379 (2004), among other authorities.

**SECOND AFFIRMATIVE DEFENSE (Statute of Limitations).** The Counterclaims, or certain of them, are barred in whole or in part by the applicable statutes of limitations under Colorado and California law.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**THIRD AFFIRMATIVE DEFENSE (Statute of Frauds).** The Counterclaims, to the extent they rest on alleged oral modifications, agreements, or representations, are barred by the applicable Statute of Frauds.

**FOURTH AFFIRMATIVE DEFENSE (Express Contract Displaces Equitable Remedies).** The Seventh Counterclaim for unjust enrichment and money had and received is barred because an express contract — the Consulting Agreement and CIIAA, both pleaded by Counterclaimant — governs the same subject matter. *McBride v. Boughton,* 123 Cal. App. 4th 379, 388 (2004).

**FIFTH AFFIRMATIVE DEFENSE (Economic Loss Rule).** The Third and Fourth Counterclaims sounding in fraud are barred in whole or in part by the economic loss rule because the alleged misrepresentations concern the subject matter of the Consulting Agreement and the alleged damages are purely economic. *Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979 (2004); *Town of Alma v. AZCO Construction, Inc.,* 10 P.3d 1256 (Colo. 2000).

**SIXTH AFFIRMATIVE DEFENSE (Account Owner Authorization).** The Fifth and Sixth Counterclaims for conversion and violation of Cal. Penal Code § 502 are barred, in whole or in part, by the doctrine that an authorized account owner cannot, by definition, "exceed authorized access" or act "without

permission" with respect to systems for which he is the registered owner of record. *Van Buren v. United States*, 593 U.S. 374 (2021) (by analogy in interpreting cognate statutory language).

**SEVENTH AFFIRMATIVE DEFENSE (Consent / Authorization through Transition Process).** Counter-Defendant's conduct during the transition period following his January 28, 2026 termination of the Agreement was authorized by, and conducted in coordination with, Counterclaimant's own officers — as Counterclaimant itself admits at Paragraph 21 of its Answer (Counterclaimant's officers "coordinated a transition process for account access following Kasel's termination of the Agreement").

**EIGHTH AFFIRMATIVE DEFENSE (Waiver, Estoppel, Acceptance).** Counterclaimant's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and acceptance, based on Counterclaimant's payment of invoices, continued use and acceptance of work product, contemporaneous expressions of satisfaction by Counterclaimant's officers, and continued operational reliance on work product authored by Counter-Defendant.

**NINTH AFFIRMATIVE DEFENSE (Ratification).** Counterclaimant ratified Counter-Defendant's work product through repeated contemporaneous

payments, repeated acknowledgments of progress and completion, and continued business reliance on the work product throughout and following the engagement.

**TENTH AFFIRMATIVE DEFENSE (Modification by Course of Performance).** The parties modified the Agreement's scope and timeline by course of performance over the duration of the engagement, including through scope additions, scope reductions directed by Counterclaimant, and integration with new lending partners (as Counterclaimant admits at Paragraph 27 of its Counterclaim).

**ELEVENTH AFFIRMATIVE DEFENSE (Mootness as to Continuing Conduct).** Counterclaimant's claims for "continuing" breach of the CIIAA, "continuing" denial of access, and "continuing" violation of Cal. Penal Code § 502 are moot on the face of Counterclaimant's own pleading, to the extent Counterclaimant has admitted at Paragraph 47 of its Counterclaim that Counterclaimant recovered administrative access through the third-party developer.

**TWELFTH AFFIRMATIVE DEFENSE (Failure of Conditions Precedent).** Counterclaimant failed to perform conditions precedent to recovery, including timely payment of amounts properly invoiced, performance

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

of project-management and decisional obligations within Counterclaimant's control, and provision of resources and integrations necessary for completion of the work product.

**THIRTEENTH AFFIRMATIVE DEFENSE (Voluntary Payment Doctrine).** Counterclaimant's restitution and money-had-and-received claims are barred in whole or in part by the voluntary payment doctrine under California law.

**FOURTEENTH AFFIRMATIVE DEFENSE (Setoff and Recoupment).** To the extent any amount is found owing from Counter-Defendant to Counterclaimant, Counter-Defendant is entitled to setoff and recoupment against any such amount, including Counter-Defendant's affirmative claims for unpaid wages, statutory penalties, expense reimbursement, and other relief sought in his Complaint and First Amended Complaint.

**FIFTEENTH AFFIRMATIVE DEFENSE (Litigation Privilege).** Counterclaimant's claims, to the extent premised on Counter-Defendant's pre-litigation communications, are barred by the litigation privilege. Cal. Civ. Code § 47(b); *Action Apartment Ass'n v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007).

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**SIXTEENTH AFFIRMATIVE DEFENSE (Anti-SLAPP Reservation).** Counter-Defendant expressly reserves all rights to bring a special motion to strike under Cal. Civ. Proc. Code § 425.16 with respect to any counterclaim premised on protected speech or petitioning conduct, including the Third and Fourth Counterclaims to the extent they are based on communications made in anticipation of litigation. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999).

**SEVENTEENTH AFFIRMATIVE DEFENSE (Heightened Pleading — Rule 9(b)).** The Third and Fourth Counterclaims sounding in fraud fail to plead the alleged misrepresentations with the particularity required by Fed. R. Civ. P. 9(b).

**EIGHTEENTH AFFIRMATIVE DEFENSE (Lack of Cognizable § 502(e) Damages).** The Sixth Counterclaim fails because Counterclaimant has not pleaded — and cannot plead — actual damages cognizable under Cal. Penal Code § 502(e). The damages categories Counterclaimant pleads, including "costs to secure" pre-existing access and "costs to investigate" whether Counter-Defendant retained Confidential Information, are not cognizable § 502(e) loss as a matter of law.

**NINETEENTH AFFIRMATIVE DEFENSE (Bilateral Conduct / Unclean Hands).** Counterclaimant's claims for equitable and injunctive relief are barred by the doctrine of unclean hands, including but not limited to Counterclaimant's own substantially contemporaneous modification of Counter-Defendant's access to systems used in the engagement during the same February 4-5, 2026 period and Counterclaimant's failure to perform conditions precedent to recovery.

**TWENTIETH AFFIRMATIVE DEFENSE (Counsel as Necessary Witness).** Counterclaimant's counsel of record participated in the review and revision of the agreements at issue (as Counterclaimant admits at Paragraph 6 of its Answer), and in personnel and payment decisions and pre-litigation communications central to the claims and counterclaims herein. The California Rules of Professional Conduct, including Rules 1.7 and 3.7, are implicated.

**TWENTY-FIRST AFFIRMATIVE DEFENSE (Acceptance, Ratification, and Continuing Course of Conduct).** Counterclaimant's claims for restitution, conversion, and computer trespass are barred, in whole or in part, by the doctrines of ratification, acceptance, waiver, election of remedies, and Counterclaimant's continuing course of conduct inconsistent with the allegations of the Counterclaims.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**TWENTY-SECOND AFFIRMATIVE DEFENSE (Speculative / Uncognizable Damages).** Counterclaimant's alleged damages are speculative, unsupported, and not cognizable, including but not limited to: (a) "costs to secure" damages that presuppose pre-existing authorized access; (b) "costs to investigate" damages that admit factual uncertainty as to whether any conduct has occurred; and (c) damages claimed across multiple counterclaim theories that Counterclaimant itself acknowledges at Paragraph 122 of its Counterclaim are not duplicatively recoverable.

**TWENTY-THIRD AFFIRMATIVE DEFENSE (Intervening / Superseding Causation).** Counterclaimant's alleged damages, if any, were caused in whole or in part by intervening and superseding decisions and conduct of Counterclaimant and third parties under Counterclaimant's direction, including but not limited to Counterclaimant's engagement of additional or successor developers, Counterclaimant's progressive scope reductions and project-management decisions during the engagement, and Counterclaimant's own business judgments regarding lending-partner integration, scope additions, and launch timing.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE (Single Satisfaction / Non-Duplicative Recovery).** Counterclaimant's recovery, if any,

is limited by the single satisfaction rule. As Counterclaimant itself acknowledges at Paragraph 122 of its Counterclaim, Counterclaimant cannot recover damages duplicatively across multiple counterclaim theories arising from the same alleged conduct.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE (Failure of Consideration).** Counterclaimant's claims are barred, in whole or in part, by Counterclaimant's failure of consideration, including without limitation failure to timely pay invoiced amounts and failure to provide project-management decisions, resources, and integrations within Counterclaimant's control that were necessary to performance.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE (Reservation of Additional Defenses).** Counter-Defendant expressly reserves the right to amend this Answer and to assert additional affirmative defenses upon completion of discovery and further investigation of the facts and claims at issue, including without limitation defenses based on after-acquired evidence and defenses arising from facts within Counterclaimant's exclusive control prior to discovery.

TWENTY-SEVENTH AFFIRMATIVE DEFENSE (Employee Status — Bar on Shifting Business Losses). The Counterclaims, and each purported cause

of action therein, are barred in whole or in part because Counter-Defendant was Counterclaimant's employee under California law at all relevant times. California law precludes an employer from recovering from, or shifting to, an employee losses arising from the performance of the employee's duties absent dishonesty, willfulness, or a culpable degree of negligence (Cal. Lab. Code §§ 221, 2865; Hudgins v. Neiman Marcus Group, Inc., 34 Cal.App.4th 1109 (1995)), and further precludes any setoff of such claimed losses against earned but unpaid wages (Barnhill v. Robert Saunders & Co., 125 Cal.App.3d 1 (1981)).

## V. RESPONSE TO PRAYER FOR RELIEF

Counter-Defendant denies that Counterclaimant is entitled to any of the relief sought in its Prayer for Relief, including compensatory damages, consequential damages, restitution, injunctive relief, punitive damages, pre-judgment or post-judgment interest, costs of suit, attorney's fees, or any other relief, on any of the seven Counterclaims, jointly or severally.

WHEREFORE, Counter-Defendant prays for judgment as follows on Counterclaimant's Counterclaims:

A.   That Counterclaimant take nothing by reason of its Counterclaims;

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

**B.**   That each and every Counterclaim be dismissed with prejudice;

**C.**   For costs of suit incurred herein, to the extent permitted by law;

**D.**   For attorney's fees and litigation costs to the extent permitted by contract or statute, including without limitation Cal. Penal Code § 502(e) on Counterclaimant's Sixth Counterclaim; and

**E.**   For such other and further relief as the Court deems just and proper.

## VI. RESERVATION OF RIGHTS UNDER FRCP 13 AND 15

Counter-Defendant expressly reserves all rights under Fed. R. Civ. P. 13(a), 13(e), 15, and 18 to assert additional claims, including without limitation claims that have matured or accrued after the filing of this Answer and claims that may be discovered or developed during the course of litigation. Nothing herein concedes the existence or non-existence of any compulsory counterclaim under Fed. R. Civ. P. 13(a) not herein pleaded. Counter-Defendant does not herein assert counter-counterclaims; affirmative claims of Counter-Defendant against Counterclaimant and other Defendants are stated in Plaintiff's operative First Amended Complaint and any amendment thereto.

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

This Answer is filed by Counter-Defendant William Kasel solely in response to Counterclaimant National Ag Finance Inc.'s Counterclaims.

## VII. DEMAND FOR JURY TRIAL

Counter-Defendant demands a trial by jury on all issues so triable, and joins Counterclaimant's demand for trial by jury under Fed. R. Civ. P. 38.

Dated: July 9, 2026

_____

WILLIAM KASEL

Plaintiff and Counter-Defendant,

Pro Se

946 3rd Street
Hermosa Beach, California 90254
Telephone: (415) 818-6348
Email: wkasel@gmail.com

## CERTIFICATE OF SERVICE

I, William Kasel, hereby certify that on July 9, 2026, I caused the foregoing PLAINTIFF AND COUNTER-DEFENDANT WILLIAM KASEL'S FIRST AMENDED ANSWER TO COUNTERCLAIMS to be served on the following counsel of record by U.S. mail and by electronic mail:

Case No. 2:26-cv-04310-RGK (DSRx)Plaintiff's First Amended Answer to Counterclaims

Ashley C. Seeley, Esq.

SEELEY LLC

1459 18th Street #174

San Francisco, California 94107

ashley@calhounseeley.com

*Attorney for Defendant and Counterclaimant National Ag Finance*

*Inc. and Defendant Joshua J. Mitchey*

_____

WILLIAM KASEL

Pro Se

# EXHIBIT B

Meet-and-Confer Correspondence (July 7-9, 2026)

 Gmail                                    William Kasel <wkasel@gmail.com>

## Kasel v NAF - Conferral
4 messages

**Ashley C. Seeley** <ashley@calhounseeley.com>                    Wed, Jul 8, 2026 at 6:01 AM
To: William Kasel <wkasel@gmail.com>

Mr. Kasel,

I received your two recent emails. I'm available next week on Tuesday and Wednesday for a conference call.

What blocks of time are you available during those two days?

If neither of those two days work, please send your availability for later next week.

Regards,
Ashley

**Ashley C. Seeley**              .
Attorney
Seeley LLC   |   P.O. Box 6178   |   Denver, CO 80206
T: (720) 272-1799
Admitted to Practice in Colorado, California, Arizona, Mississippi, and Alabama
ashley@calhounseeley.com

CONFIDENTIALITY NOTICE: Information in this communication is intended only for the individual(s) named. This information may be ATTORNEY WORK PRODUCT and/or LEGALLY PRIVILEGED AND CONFIDENTIAL. If you are not the intended recipient, any dissemination, distribution, or copying of this message is strictly prohibited. If you received this in error, please immediately reply to the sender you received this in error and then delete it. Thank you.

**William Kasel** <wkasel@gmail.com>                              Wed, Jul 8, 2026 at 11:14 AM
To: ashley@calhounseeley.com

Ms. Seeley,

Thank you for confirming receipt of my two July 7 emails. I am glad to hold the conference call next week. To keep the pending items on clear terms, each item below states the confirmation requested and how the item will proceed absent a written response.

1. Conference call. I am available at any time on Tuesday, July 14 or Wednesday, July 15. I will circulate a calendar invite for Tuesday, July 14 at 10:00 a.m. Pacific, together with a written agenda covering: the stipulated extension; finalization and filing of the protective order; interim confidentiality; September deposition scheduling; the Rule 26(a)(1)(A)(iii) damages computation; and the william@nationalag.com mailbox. If a different time on either day works better for you, propose it in writing by end of day Friday, July 10 and I will re-issue the invite.

2. First Amended Answer — this item cannot await the call. The Court's scheduling order sets July 10, 2026 as the last day to amend pleadings, so it is governed by the Court's calendar, not ours. If Defendants will stipulate under Rule 15(a)(2), confirm in writing by 12:00 p.m. Pacific on Thursday, July 9, and I will circulate the stipulation, proposed order, and proposed First Amended Answer the same day for signature and filing. Absent written confirmation by that time, Defendants will be understood to have declined, and I will file a motion for leave to amend on Friday, July 10; my July 7 email constitutes the conference required by Local Rule 7-3. If the parties reach agreement after filing, I will promptly

withdraw the motion as moot. One correction to my July 7 email: the proposed defense should be numbered the Twenty-Seventh Affirmative Defense, following the existing sequence of defenses in the Answer; its text is otherwise exactly as previously sent.

3. Stipulated extension. My July 7 letter requests Defendants' position on the August 28 extension by July 13, 2026. Because the proposed call falls after that date, please state Defendants' position in writing by July 13. Absent a written response by that date, the request will be treated as declined, and I will complete my responses for service by the current July 29 date, noting these meet-and-confer efforts in any related application.

4. Protective order. Please send any remaining edits to the draft protective order in writing before our call, and confirm in writing that the order, once entered, will be executed by and binding on all parties, including Mr. Mitchey individually. If I receive no edits before the call, I will understand the draft as last exchanged (with my two proposed edits of June 18) to be acceptable, and I will circulate the execution version for joint filing with Judge Roberts by July 17. If the order is not finalized at or promptly after our call, I will request an informal discovery conference with Judge Roberts to resolve the remaining terms.

5. Interim confidentiality. My July 7 letter agrees to your proposed mutual 14-day interim designation period, with designations governing use and any under-seal filing rather than a document's existence, producibility, or admissibility, and subject to the challenge procedure in the protective order to be entered. The arrangement takes effect upon your written confirmation of those mutual terms. Absent written confirmation, no interim confidentiality arrangement is in effect.

6. Damages computation. Per paragraph 6 of my July 7 letter, please supplement NAF's Rule 26(a)(1)(A)(iii) disclosures with a computation and the supporting documents for each claimed category — including those presently identified only as "to be proven at trial" — by July 22, 2026, or state in writing that NAF stands on its disclosures as served. If I receive neither by that date, I will proceed on the record as it stands, with all rights under Rule 37(c)(1) reserved.

7. Mailbox preservation. Please confirm in writing, by our call or July 15 at the latest, whether the william@nationalag.com mailbox and the associated Teams and Slack data have been preserved intact since January 28, 2026, as requested in paragraph 7 of my July 7 letter. Preservation status is a standalone item that should not await substantive discussion. If I do not receive that confirmation by July 15, I will seek the Court's assistance regarding preservation.

Each item above resolves either by written agreement or on the schedule stated. I look forward to the call.

William Kasel
Plaintiff, Pro Se
[Quoted text hidden]

---

**Ashley C. Seeley** <ashley@calhounseeley.com>                      Thu, Jul 9, 2026 at 6:03 AM
To: William Kasel <wkasel@gmail.com>

Mr. Kasel,

Defendants do not stipulate to the proposed amendment. Defendants reserve all rights with respect to any motion for leave to amend.

Tuesday, July 14 at 10:00 a.m. Pacific works for the conference call. I will discuss all pending items at that time.

Regards,

Ashley Seeley

[Quoted text hidden]

---

**William Kasel** <wkasel@gmail.com>                                 Thu, Jul 9, 2026 at 6:21 AM
To: ashley@calhounseeley.com

Ms. Seeley,

Thank you. Two points in response.

1. Conference call. Confirmed for Tuesday, July 14 at 10:00 a.m. Pacific. I will circulate a calendar invite and a short written agenda covering the pending items (the stipulated extension, the protective order and Mr. Mitchey's execution of it, interim confidentiality, September deposition scheduling, the Rule 26(a)(1)(A)(iii) damages computation, and the william@nationalag.com mailbox).

2. First Amended Answer. I note that Defendants decline to stipulate. Because the Court's scheduling order sets July 10, 2026 as the last day to amend pleadings, this item cannot await the July 14 call, and — as stated in my prior email — I will file a motion for leave to amend by Friday, July 10 to preserve the issue. My July 7 email and your response constitute the conference of counsel under Local Rule 7-3. If the parties reach agreement on the call or thereafter, I will promptly withdraw the motion as moot.

I look forward to speaking Tuesday.

William Kasel
Plaintiff, Pro Se

[Quoted text hidden]